[S. F. No. 534. In Bank.—September 16, 1896.]

JULIUS KAHN, Appellant, *v.* ADOLPH SUTRO et al., Board of Election Commissioners of the City and County of San Francisco, and WILLIAM M. HINTON, Registrar of Voters, Respondents.

Municipal Corporations—Distinction between City and County.—One feature by which a city is distinguished from a county, in this state, is the source from which its authority is derived. The powers to be exercised under a county government are conferred by the legislature, irrespective of the will of the inhabitants of the county, whereas the inhabitants of a city are authorized to determine whether they will accept the corporate powers offered them, to be exercised by officers of their own selection.

Id.—San Francisco both a City and a County—Municipal and County Officers.—Under the constitution, and the act of April 19, 1856, com-

monly known as the Consolidation Act, and other acts relative thereto, the body politic known as the city and county of San Francisco is a municipal corporation, and in matters of government is to be regarded as a city, with the right to select officers to execute the powers of that government according to the terms of its charter. But the territory over which that government is exercised, considered in its political and judicial relations to other portions of the state, is at the same time a county, and the officers elected by its voters, to the extent that they exercise only such powers as are given by laws relating merely to counties, and who do not derive any of their authority from the charter, are to be regarded as county officers, as distinguished from city officers, and their term of office and time of election is determined by the County Government Act of 1893.

Id.—MUNICIPAL OFFICERS PERFORMING FUNCTIONS OF COUNTY OFFICERS.—Those officers whose election is authorized by both the Consolidation Act and the County Government Act, but who are required by the Consolidation Act to perform the duties therein prescribed, do not cease to be municipal officers because under the County Government Act similar duties are prescribed for county officers of the same name. To the extent that these officers are a component part of the municipal government they are municipal officers, and do not cease to be such by reason of the fact that other functions which pertain to county officers are imposed upon them.

Id.—MUNICIPAL OFFICERS ENUMERATED—TERM OF OFFICE.—Of the officers of the city and county of San Francisco, provided for by the act of April 2, 1866, and other acts amendatory thereto, the mayor, attorney and counselor, superintendent of public streets, highways, and squares, and school directors, are not named in the County Government Act of 1893 as county officers, and their terms of office are not subject to the provisions of that act. They are municipal officers, and their term of office is fixed by the act of April 2, 1866, at two years. Their successors are to be elected at the general election to be held in November, 1896.

Id.—JUDGES OF POLICE COURT.—Judges of the police court are not named in the County Government Act of 1893, either as county or township officers, and no provision is found therein relative to their duties or term of office. That court has its existence by virtue of section 1 of article VI of the constitution, authorizing the legislature to establish inferior courts in any incorporated city, town, or city and county, and the act of 1893, page 9, establishing it in the city and county of San Francisco. Their term of office is fixed at two years, and their successors are also to be elected at the general election to be held in November, 1896.

Id.—TREASURER—AUDITOR—TAX COLLECTOR—SURVEYOR.—The treasurer, auditor, tax collector, and surveyor, being each required by the Consolidation Act to perform certain municipal duties not imposed upon officers of the same name by the County Government Act, are municipal officers, whose term of office is fixed at two years. Their successors are also to be elected at the general election to be held in November, 1896.

Id.—SUPERVISORS.—The supervisors authorized by the Consolidation Act are not the same body as that authorized by the County Government

Act, although they bear the same name. Such board consists of twelve members, while the board of supervisors authorized for a county consists of only five members, and exercises functions peculiarly appropriate to a county. The members of such board are municipal officers, whose term of office is fixed at two years. Their successors are also to be elected at the general election to be held in November, 1896.

ID.—JUSTICES OF PEACE.—The justices of the peace of the city and county of San Francisco, provided for by the act of March 26, 1866, and the acts amendatory thereto, were continued in force by the constitution, section 3 of article XII, and by section 85 of the Code of Civil Procedure the term of office of such justices is fixed at two years. Being a part of the judicial system of the state, such justices of the peace are not included in the system of county government, and the provision in the County Government Act, fixing the term of justices of the peace for the townships into which the several counties are divided at four years, does not apply to the justices of the peace elected for such city and county.

ID.—ASSESSOR—SUPERINTENDENT OF SCHOOLS.—The term of office of the assessor was made four years by section 4109 of the Political Code, upon its adoption in 1872, and by section 3 of article IX of the constitution the superintendent of schools is to be elected at each gubernatorial election. Such officers having been elected in 1894, for the term of four years, their successors are not to be elected at the general election to be held in 1896.

ID.—COUNTY OFFICERS.—The district attorney, sheriff, county clerk, county recorder, coroner, and public administrator, are officers whose powers and duties are given by the County Government Act, or by other general laws, and do not derive any authority from the Consolidation Act, or exercise any function in the municipal government of San Francisco. They are county officers, and their term of office, as well as the time of their election, are determined by the County Government Act of 1893.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. SEAWELL, Judge.

The facts are stated in the opinion of the court.

*W. H. L. Barnes, W. W. Foote,* and *T. C. Coogan,* for Appellant.

*F. Adams,* for the County Clerk.

*Garret W. McEnerney,* for Respondents.

*Reddy, Campbell & Metson, Amici Curiæ.*

HARRISON, J.—The plaintiff brought this action to restrain the board of election commissioners of San

Francisco from calling an election for city and county officers at the coming general election, and from incurring the expenses attendant thereon, claiming that under the provisions of the County Government Act of March 24, 1893, as construed in the case of *Hale* v. *McGettigan, ante,* p. 112, recently decided, there can be no election for such officers until the general election in 1898. Judgment was rendered in favor of the defendants upon a demurrer to the complaint, and the plaintiff has appealed therefrom.

The question presented for determination is whether the above act of 1893 applies to the city and county of San Francisco, and the determination of this question depends upon the character of that body corporate in its relation to the other portions of the state—whether it is to be regarded as a city or as a county. One feature by which a city is distinguished from a county, in this state, is the source from which its authority is derived. The powers to be exercised under a county government are conferred by the legislature, irrespective of the will of the inhabitants of the county, whereas the inhabitants of a city are authorized to determine whether they will accept the corporate powers offered them, to be exercised by officers of their own selection. In *Hamilton County* v. *Mighels,* 7 Ohio St. 109, the distinction between these two bodies was given in these words: "Municipal corporations proper are called into existence through the direct solicitation or by the free consent of the people who compose them. Counties are legal subdivisions of a state, created by the sovereign power of the state, of its own sovereign will, without the particular solicitation, consent, or concurrent action of the people who inhabit them. The former organization is asked for, or at least assented to, by the people it embraces; the latter is superimposed by a sovereign and paramount authority."

While the corporate name of this body politic is "The city and county of San Francisco," it is recognized by the constitution as having the attributes of both a city

and a county, and also as having attributes distinguishing it from either. Geographically, it is one of the legal subdivisions of the state, and in that respect is recognized in section 1 of article XI of the constitution, as one of the counties of the state. Politically, it is regarded in that instrument as a municipal corporation. It was held in *People* v. *McFadden*, 81 Cal. 489, that a county is not a corporation for municipal purposes, within the meaning of section 7 of article XI of the constitution. The provision in this section that "city and county governments may be merged and consolidated into one municipal government, with one set of officers, and may be incorporated under general laws providing for the incorporation and organization of corporations for municipal purposes," implies that such political body is a municipal corporation, and that its government is a municipal and not a county government. At its first session after the adoption of the constitution, the legislature passed an act known as the "McClure Charter," purporting to provide for the government of San Francisco, and to be carried into effect irrespective of any action by the inhabitants of the city. (Stats. 1880, p. 137.) In *Desmond* v. *Dunn*, 55 Cal. 242, it was held that under the constitution the act could not have any effect, except with the consent of a majority of the electors of San Francisco. If it had been considered that the government for San Francisco was a county government, this argument would have been inapplicable, and the court would have regarded the provisions of section 4 of article XI as sufficient to sustain the validity of the act; but the act was held invalid on the ground that the charter of the city then existing should remain in force until superseded or changed in the mode prescribed by the constitution. The charter of San Francisco is made up of the Consolidation Act and the various amendments thereto, together with such other statutes relating to the government of the city and county, or conferring powers upon its officers, as were in force at the adoption of the present constitution. It was urged by counsel in the

case last cited that the "cities" mentioned in section 6 were corporations other than consolidated cities and counties, and, therefore, that the clause was not applicable to San Francisco; but it was held that the clause in section 7, "The provisions of this constitution applicable to cities, and also those applicable to counties, so far as not inconsistent or not prohibited to cities, shall be applicable to such consolidated government," meant that such consolidated governments are to be regarded as cities, and that "all the provisions of the constitution which are applicable to cities are likewise applicable to consolidated governments."

The city of San Francisco was created and its limits defined by the act of April 15, 1850 (Stats. 1850, p. 223), and section 2 of that act declared that, "The inhabitants of the city of San Francisco, within the limits above described, shall be, and they are hereby constituted, a body politic and corporate in fact and in law, by the name and style of the 'city of San Francisco.'" Section 1 of the act of April 19, 1856 (Stats. 1856, p. 145), commonly known as the Consolidation Act, by virtue of which the present corporate character of San Francisco exists, declares: "The corporation or body politic and corporate now existing and known as the city of San Francisco shall remain and continue to be a body politic and corporate in name and in fact, by the name of the city and county of San Francisco," etc. The effect of this legislative action was merely to continue with extended boundaries and additional powers the city of San Francisco which had been incorporated in 1850; and, although the provisions of the charter were in many respects appropriate for a county, the corporation thus created remained a city under a different name, but the inhabitants of the territory thus brought under the provisions of the city charter were not invested with county government. (*People* v. *Supervisors*, 21 Cal. 668; *Wood* v. *Election Commrs.*, 58 Cal. 561.) Section 8 of article XI of the constitution, as originally

adopted in 1879, provided that any "city" containing a population of more than one hundred thousand inhabitants might cause a freeholders' charter to be framed for its own government. Under this provision of the constitution the inhabitants of San Francisco elected a board of freeholders, in 1880, and the validity of this election and the power of the board to frame a charter was upheld in *People* v. *Hoge*, 55 Cal. 612, upon the ground that under this section of the constitution San Francisco was a city.

In *Staude* v. *Election Commrs.*, 61 Cal. 313, it was held that the provisions of section 4109 of the Political Code, as amended in 1881, by which the time for the election of city and county as well as other officers throughout the state, was changed, were applicable to San Francisco, by virtue of the clause in section 6 of article XI, that "cities or towns heretofore organized shall be subject to and controlled by general laws." It may, therefore, be regarded as settled by the decisions of this court that the city and county of San Francisco is a municipal corporation, and in matters of government is to be regarded as a city.

But, while the people of San Francisco are thus to be regarded as under a municipal government, with the right to select officers to execute the powers of that government according to the terms of its charter, the territory over which that government is exercised is at the same time a county, and for those purposes for which county officers exercise authority, not derived from the charter and disconnected with municipal government, its officers are properly termed county officers. Considered in its political and judicial relations to other portions of the state, the officers elected by its voters, to the extent that they exercise only such powers as are given by laws relating merely to counties, and who do not derive any of their authority from the charter, are to be regarded as county officers, as distinguished from city officers.

It is not possible to make a harmonious construction

of the terms "county," "city," and "city and county" as they are used in the constitution. The term "county' is sometimes used therein as a geographical subdivision of the state; sometimes as a political division for the exercise of governmental functions; and in the latter use it is sometimes employed as the equivalent of "city and county," and sometimes as distinguished therefrom; and the term "city and county" is sometimes used as the equivalent of "city." San Francisco is distinctly recognized therein as the geographical equivalent of a county—as in the provision for the election of judges of the superior court, and for the formation of a district for the election of a railroad commissioner; and to hold that it is not a county for any purpose would render inoperative many provisions of the constitution and of the statutes of the state which have heretofore been recognized as applicable to it, with the result that unsuspected difficulties and perplexities would arise in the administration of justice. Without enumerating many instances, it is sufficient to call attention to the fact that there would be in that city no provision for a grand jury or for a board of equalization, or for the exercise of any appellate jurisdiction by the superior court, or for the exercise of eminent domain, or for creating the lien of a judgment upon real estate, or for the probate of wills, or for filing articles of incorporation; and the practitioner will readily perceive the confusion that would result in criminal jurisprudence, as well as in civil practice, if the city and county of San Francisco is to be excluded wherever the term "county" is used.

The constitution of Missouri provided for the extension of the limits of the city of St. Louis, and its incorporation into a separate and distinct body politic, under a charter to be framed by a board of freeholders, and that it should be independent of the county of St. Louis. After its organization under a charter thus framed the governor appointed a sheriff for it, upon the ground that by its organization it became a new county, or political subdivision of the state. The right of this appointee

to exercise the office was presented in *State* v. *Finn*, 4 Mo. App. 347, and, in discussing the character of the new body politic, the court said: "The question in this case is not whether the city of St. Louis, as now organized under the scheme and charter, is a county in the sense in which that word is used in the constitution to describe the normal county of the state. It is not such a county. It has not, nor was it intended to have, a county court, and it has a chief executive, and two houses of legislation. In spite of these and other features which distinguish it from the normal county, it may be a county so far as to keep up a relation as such to the rest of the state. It may be a part of the general county system, and it is so, unless the framers of the constitution intended to segregate it and to dissever in the case of St. Louis that county relation which every other portion of the state bears to the state. Because the organization of this body as a city is pronounced and its features strongly marked, and because they thus reduce its attributes as a county into comparative insignificance, it does not follow that the latter do not exist, and it cannot be denied that it is a county in the sense in which that term is used, when, if not a definition, at least the nearest approach to a definition which the constitution affords, is attempted—'a legal subdivision of the state.' Unless the words are plain, it cannot be held that the convention intended to create a political body which should be outside of that county system which prevails, not only in this state, but throughout the country. The researches of the counsel for the relator have not enabled them to find any instance in the United States of a municipal corporation which is not either within some county, or which does not itself bear a county relation to the state. Much of the reasoning of the relator implies that the city of St. Louis cannot be a county because it is a city, but it will readily be admitted that the framers of the constitution could have made it a city, and also have made it a county. That they have not done so must be shown by the pro-

visions of the constitution, not by arguing that it cannot be a county because it is a city. The fact that a county essentially differs from a city does not prove that a city may not contain the features of a county organization. Cities and counties may be distinct organizations in the state generally, but the constitution may, by special provisions, establish a body which shall have the peculiar powers and obligations of a municipal corporation, properly so called, and yet shall bear those relations to the sovereign power which constitute a county."

Prior to the enactment of the Consolidation Act, the county of San Francisco extended to San Francisquito creek on the south, but by that act the boundaries of the city were enlarged to their present extent; and section 9 of the schedule annexed to the act provided that "There shall be formed out of the southern portion of the county of San Francisco a new county, to be called San Mateo." There was no express declaration that the remaining territory which was placed under municipal government should cease to be the county of San Francisco, nor was there any further designation by the legislature of the county boundaries until the adoption of the Political Code in 1872; but the limitation of the new county to the "southern portion" of the county of San Francisco, implies that the other portion continued to remain the county of San Francisco as before. Section 3901 of the Political Code defines a county as "the largest division of the state having corporate powers," and section 3902 declares: "This state is divided into counties, named, bounded, and constituted as provided in this title," and the names and boundaries of the several counties are given in section 3909 and the succeeding sections. Section 3950 gives the boundaries of the territory which remained of the county of San Francisco after its inhabitants had been incorporated into a municipal corporation under the Consolidation Act, and the name given to this territory is "San Francisco (city and county)." By these sections this territory was declared to be one of the counties of the state, and con-

tinued to be such county until the adoption of the present constitution, in which, article XI, section 1, it is declared: "The several counties as they now exist are hereby recognized as legal subdivisions of the state." Title II of part IV of the Political Code is devoted to "the government of counties," and in chapter III of that title are found provisions designating the officers of a county and prescribing their powers and duties. Until this portion of the Political Code was superseded by the County Government Act it was the only statute of the state which defined the powers and duties of certain officers elected by the voters of San Francisco, and upon the enactment of the County Government Act that statute alone became the source from which these officers have derived their powers.

San Francisco is, therefore, both a city and a county, and, although the boundaries of the two bodies corporate are coincident, the electors within this territory vote for officers whose authority and functions are derived exclusively from the charter of the city, and also for officers whose powers and duties are prescribed by general laws, and upon which the charter is silent. It must follow from this that some of its officers are city officers and others are county officers. There is nothing unusual or inconsistent in this. The "government" of the city is municipal, and the officers who are to exercise that government are municipal officers, but the territory in which that government is exercised is still a part of the state, and for all purposes other than municipal government, is subject to its control, with the right on the part of the state to authorize the election therein of such officers as may be required to execute its general laws, or to perform such functions, disconnected with the municipal government, as may pertain to the government of the state. It would not be contended, if the city was only a portion of the county, or if a county should be composed entirely of incorporated cities, that the state would be precluded from authorizing the election, by the voters of the county, of officers

to carry out those provisions of its laws which pertain to the state at large, and which have no connection with municipal affairs; and this rule is not changed where the county consists of a single city instead of several. Although the same body of voters choose the different officers, the functions of the officers chosen by them are distinct in their nature, and the character of the officers must be determined by the source of their authority and the functions they are to exercise.

Section 5 of article XI of the constitution declares: "The legislature by general and uniform laws shall provide for the election or appointment in the several counties of boards of supervisors, sheriffs, county clerks, district attorneys, and such other county, township, and municipal officers as public convenience may require." In obedience to this direction, the legislature passed the County Government Act of 1893, declaring what county officers shall be elected, in which are included those designated in the above section, prescribing their duties, and fixing their term of office at four years. Some of the officers whose election is thus authorized are the same in name and are given the same or similar functions as are officers authorized, by the Consolidation Act to be elected in San Francisco, while others whose election is authorized by each of these statutes have no authority except that which is given in the County Government Act. On the other hand, the Consolidation Act authorizes the election of several officers whose election is not authorized by the County Government Act, and who are not named therein as county officers. Those officers whose election is authorized by each of these statutes, but who are required by the Consolidation Act to perform the duties therein prescribed, do not cease to be municipal officers because under the County Government Act similar duties are prescribed for county officers of the same name. To the extent that these officers are a component part of the municipal government they are municipal officers, and do not cease to be such by reason of the fact that other functions which pertain to

county officers are imposed upon them. The guaranty
given to the city and county of San Francisco by the
constitution, of the right to continue its government
under the charter which it held at the adoption of that
instrument until it shall adopt another, including the
right given by that charter to change its officers every
two years if it shall so elect, cannot be taken away by
the legislature under the form of imposing upon these
officers certain functions exercised by county officers in
other counties of the state, and fixing the term of such
county officers at four years. But as the territory thus
placed under municipal government still remains a
county, and is not taken out of the control of the state
for all purposes not embraced within the scope of muni-
cipal government, the authorization by the legislature
of an election by the voters of that territory for officers
to carry out these laws does not make the persons so
elected city officers. The constitution has declared that
certain officers shall be elected within each county, and,
if San Francisco is a county, the legislature is author-
ized to provide for the election of these officers by its
voters, and is not precluded therefrom by the fact that
they are voted for by the electors of the municipality at
the same time with the election of its municipal officers.
Prior to 1876 the voters of San Francisco elected one of
the members of the board of state harbor commissioners,
but that fact did not constitute him a city officer.

The officers of the city and county of San Francisco
are designated in the act of April 2, 1866 (Stats. 1866,
p. 718), as follows: "There shall be elected hereafter for
the city and county of San Francisco, by the qualified
electors thereof, at the times hereinafter mentioned, and
in the manner prescribed by law for the election of
state and county officers, one mayor who shall be *ex offi-
cio* president of the board of supervisors, a county judge,
police judge, an attorney and counselor, probate judge,
district attorney, sheriff, county clerk, recorder, treas-
urer, auditor, tax collector, assessor, coroner, public
administrator, surveyor, superintendent of common

schools, superintendent of public streets, highways, and squares, chief of police, harbor master, and state harbor commissioner.   There shall be elected in each of the twelve present election districts of said city and county, which shall hereafter constitute municipal districts, and be designated and known in law as wards, by the qualified electors thereof, one supervisor and one school director."   The term of office for these officers was fixed by the act at two years.   The time for their election was subsequently changed, and is now fixed by section 4109 of the Political Code.   The offices of county judge and probate judge were abolished by the constitution, and that of harbor master by statute.   The police judge has been superseded by the judges of the police court, and certain changes have been made in the mode of electing supervisors.   The chief of police and the state harbor commissioner have ceased to be elective officers. It will be observed that this statute does not declare that these are city officers, or are officers of the city and county, but merely that these officers "shall be elected *for* the city and county of San Francisco, by the qualified electors thereof," leaving the character of the officer, whether he is to be denominated a county officer or a municipal officer, to be determined by the nature of the duties he is to perform, and the source from which he derives his authority.

Of the officers above enumerated, the mayor, attorney and counselor, sometimes styled city and county attorney (see Stats. 1871–72, p. 232), superintendent of public streets, highways, and squares, and school directors, are not named in the County Government Act as county officers, and consequently cannot be subject to the provisions of that statute.   Judges of the police court are not named in the County Government Act, either as county or township officers, and no provision is found therein relative to their duties or term of office.   This court has its existence by virtue of section 1 of article VI of the constitution, which authorizes the legislature to establish inferior courts in any incorporated city,

town, or city and county, and the act establishing it in the city and county of San Francisco (Stats. 1893, p. 9) declares that the court " shall consist of four judges, who shall be elected at the general election held according to law, each of whom shall hold office for the term of two years."

The treasurer, auditor, tax collector, and surveyor, are designated in the Consolidation Act as officers of the municipality, and are required to perform certain municipal duties which are not required from county officers who are elected for these offices in their respective counties.   In addition to these duties, the treasurer is constituted a part of the appointing power for the license collector (Stats. 1872, p. 736); the auditor is made a member of the board of new city hall commissioners (Stats. 1876, p. 461); and the auditor, the tax collector, and the city and county surveyor are members of the board of election commissioners for the city and county.   (Stats. 1878, p. 299.)   If it should be held that these are merely the officers designated by those names in the County Government Act, it would follow that their functions would be solely those given in that act, and not those given in the Consolidation Act; otherwise the County Government Act would cease to be uniform in its application to these officers in all the counties of the state, and would have the effect to repeal the provisions of the charter requiring them to exercise these municipal functions.   The supervisors authorized by the Consolidation Act to be elected do not constitute the same body as that authorized by the County Government Act, although they bear the same name.   The board of supervisors authorized by the Consolidation Act is for the government of the city and county, and consists of twelve members, while the board of supervisors authorized for a county consists of only five members, and exercises functions peculiarly appropriate to a county, but has not the authority required for providing for the wants of a city.

Section 1 of article VI of the constitution vests in

justices of the peace a part of the judicial power of the
state, and makes them a part of the judicial department
of the state (*People* v. *Ransom*, 58 Cal. 558); and section
11 of the same article declares: "The legislature shall
determine the number of justices of the peace to be
elected in townships, incorporated cities and towns, or
cities and counties, and shall fix by law the powers, duties,
and responsibilities of justices of the peace." Section 3
of article XII declares: "All courts now existing, save
justices' and police courts, are hereby abolished," and
section 11 of the same article declares: "All laws relative
to the present judicial system of the state shall be applic-
able to the judicial system created by this constitution
until changed by legislation." By these provisions the
justices' courts in existence at the adoption of the con-
stitution were continued as a part of the judicial system
of the state established by that instrument, and the laws
relative to those courts, as well those providing for their
organization as those which define their powers and
duties, were continued in force until they should be
changed by the legislature. By the act of March 26,
1866 (Stats. 1866, p. 423), a justices' court was created
for the city and county of San Francisco, for which five
justices of the peace were to be elected by the electors
of the city and county at large for the term of two years,
and the division of the city and county into townships
for the purpose of electing justices of the peace and
constables, which was authorized by section 6 of the
Consolidation Act, as amended by the act of April 18,
1857 (Stats. 1857, p. 210), was abolished. This act was
further amended by the act of February 10, 1870 (Stats.
1870, p. 56), and by section 12 thereof the office of con-
stable in said city and county was abolished. These
acts were in force at the adoption of the constitution,
and, as seen above, are yet in force, unless they have
been changed by the legislature. Section 11 of article
VI, above quoted, recognizes the propriety of different
provisions for justices of the peace in townships and in
incorporated cities, or cities and counties, and, at the

first session of the legislature after the adoption of the constitution, that body revised title I of part I of the Code of Civil Procedure, and in chapter V assumed to comply with the directions of the above section of the constitution, and fixed the term of office of justices of the peace at two years. Section 85 declares: "There shall be in every city and county of more than one hundred thousand population a justices' court, for which five justices of the peace shall be elected, by the qualified electors of such city and county, at the general election next preceding the expiration of the terms of office of their predecessors." It is suggested, rather than argued, by counsel herein that this act is unconstitutional; but, without passing upon this question, it is sufficient to say that, if it should be so held, it would follow that the above laws relative to San Francisco, in force at the adoption of the constitution, were not thereby changed, but still remain in force, unless they have been superseded by other legislation. This act was considered by this court in *People* v. *Ransom, supra,* and was held constitutional, so far as the matter then before the court was concerned.

Section 58 of the County Government Act of 1893 (Stats. 1893, p. 366) declares the officers of a township to be two justices of the peace and two constables, and directs the board of supervisors of each county to divide their respective counties into townships for the purpose of electing justices of the peace and constables. The legislature has never made the provision for township organization authorized by section 4 of article XI, and the township which is authorized by section 58 of the County Government Act is only a geographical subdivision of the county "for the purpose of electing justices of the peace and constables," and does not possess any attributes of government to be exercised by an officer. (See *Ex parte* Wall, 48 Cal. 279.) As the city and county of San Francisco is under a municipal government, and, as there is no board of supervisors for the "county" of San Francisco, there is no authority for the division of

the city and county into townships, and there has been
no such division, and, consequently, these provisions
of section 58 for the officers of a township, as well as
the provisions of section 60 for the election of township
officers, are inapplicable.   It is not contended that there
is any authority for the election of a constable in San
Francisco.   Even if a justice of the peace could, by any
construction, be styled a county officer, he has not been
classed with the county officers enumerated in section
57 of the County Government Act,. but by section 58 of
that act has been specifically declared a township officer.
But, as we have above seen, there is no provision for
township officers in San Francisco.

Being a part of the judicial system of the state, justices
of the peace are not included in the system of county
government which the legislature is directed to establish
and cause to be uniform throughout the state, and pro-
visions relating to their election and term of office, as
well as those relating to their powers and duties, are
more appropriately placed in laws relating to the judi-
cial department than in those relating to the system of
county government.   The different provisions in the
constitution relating to the powers, duties, responsibili-
ties and election of justices of the peace are found in
article VI, which treats exclusively of the judicial de-
partment.   There is no provision in this article, or in
the article relating to the legislative department, which
requires that the term of office of a justice of the peace
shall be the same in all parts of the state, and there are
many reasons why the powers and duties of this officer,
as well as his term of office, should be different in an
incorporated city from those applicable to a sparsely
settled township.   Section 10 of article XXII declares
that judicial officers shall be elected at the time and in
the manner that state officers are elected, but there is
no requirement that the term of office of such judicial
officers as the legislature may authorize to be elected
shall be uniform throughout the state.   The provision
in section 11 of article VI, that the legislature shall de-

termine the number of justices of the peace to be elected
in townships, incorporated cities and towns, or incor-
porated cities and counties, shows that it was not in-
tended that the laws relating to this portion of the
judicial system should be uniform throughout the state,
but the number for each of these subdivisions or bodies
corporate is to be fixed by the legislature, as it may deem
applicable to their respective needs.    This provision
recognizes the necessity of different provisions for these
bodies, and, in the absence of constitutional restriction,
gives to the legislature the power to adapt its laws to
their respective conditions.    The further provision in
section 11, that the legislature shall "fix by law the
powers, duties, and responsibilities of justices of the
peace," is limited by section 25 of article IV, which
prohibits that body from passing a local or special law
"regulating the jurisdiction and duties of justices of the
peace, police judges, and constables," and by section 1
of article I, that "all laws of a general nature shall have
a uniform operation."    The term of office of an officer
is, however, entirely distinct from his jurisdiction or
duties, and a law of a general nature has a uniform
operation, if it affects all the individuals of a class for
which the legislature is authorized to make specific laws.
The act of March 18, 1885 (Stats. 1885, p. 213), gives to
the police courts therein created certain exclusive juris-
diction of matters which by the general law is vested in
justices of the peace; and in *People* v. *Henshaw*, 76 Cal.
436, this act was sustained and held not to be a local or
special law.    The act creating the police court for the
city and county of San Francisco confers upon it cer-
tain jurisdiction which is elsewhere exercised by justices'
courts.    From these considerations it must be held that
the provision in the County Government Act, fixing the
term of office of justices of the peace for the townships
into which the several counties are divided, at four
years, does not apply to the justices of the peace elected
for the city and county of San Francisco.

We hold, therefore, that the term of office of the fore-

going municipal officers, and also of the judges of the police court, and of the justices of the peace who were elected at the general election in 1894, has not been changed by the County Government Act, and that an election for their successors must be held at the coming general election.

The term of office of the assessor was made four years by section 4109 of the Political Code, upon its adoption in 1872, and, by section 3 of article IX of the constitution, the superintendent of schools is to be elected at each gubernatorial election. Under these provisions, these officers were elected in 1894 for the term of four years.

The district attorney, sheriff, county clerk, county recorder, coroner, and public administrator, are officers whose powers and duties are given by the County Government Act, or by other general laws, and do not derive any authority from the Consolidation Act, or exercise any function in the municipal government of San Francisco. These officers are, therefore, county officers, and their term of office, as well as the time of their election, are those provided by the County Government Act.

The demurrer to the complaint was, therefore, properly sustained, upon the ground that it was necessary for the defendants to make preparation for the election of municipal officers at the coming general election.

The judgment is affirmed.

McFARLAND, J., HENSHAW, J., VAN FLEET, J., and GAROUTTE, J., concurred.

TEMPLE, J., dissenting.—I am unable to agree with the conclusion reached by my associates. I fully concur, however, in the view that the consolidated city and county is a municipal corporation. The Consolidation Act of 1856 realized the intention stated in its title. It repealed the several charters theretofore existing of the city, and it consolidated the government of the city and

the county. The two governments were merged, and both—so far as rights and liabilities and public functions were concerned—were continued in a new corporation then created—the consolidated city and county. *It* succeeded to all the property rights and liabilities of both, and *its* officers performed all the functions which had been performed by county officers, and also all the functions imposed upon them which were purely municipal; all were, however, the officers of the municipal corporation. In no sense can it be said that some were county officers and that some were city officers. The sheriff and county clerk are as much officers of the municipal corporation as the mayor or the police judge. Whatever may be said of their powers and duties, they are part and parcel of the corporate organization known as the city and county of San Francisco. Any one officer is no less so than another. The legislature could then have made of the new corporation anything it chose, and it chose to create a consolidated government upon which it imposed the duties, and to which it granted the powers, both of a city and of a county. It was thus enabled to maintain the relation of the state to the territory as a county, and to give to the inhabitants the benefit of a city government.

But the officers of the consolidated government, who had the powers and performed the duties elsewhere performed by county officers, did so as officers of the new consolidated municipality.

These powers and duties were expressly conferred upon them in the act of 1856 as officers of the municipality. Section 4 of that act provides: "All the existing provisions of law defining the powers and duties of county officers, except those relating to supervisors and boards of supervisors, so far as the same are not repealed or altered by the provisions of this act, shall be considered as applicable to *officers of the said city and county of San Francisco, acting or elected under this act.*"

We cannot, therefore, select certain officers and say that they are county officers, and of others that they are

city officers, for all are municipal officers, and municipal officers only. Therefore, if it be true that the legislature cannot in this mode change the terms of the officers of the municipality because that would be to alter the charter, this law can have no application to the city and county of San Francisco.

It would not follow from this that general laws affecting the powers and duties of county officers would not apply to the officers of the consolidated city and county. The idea of a consolidated government of this character is that thereby the state provides for the inhabitants of the included territory the benefit of a county government. To do this effectually such laws must apply to the consolidated government.

As to the corporate existence of the municipality and the officers through whom the corporate functions shall be discharged, no reason exists why such interference should be allowed, and, if it were conceded that the legislature could so change the municipal charter, we cannot presume that it was intended. It was not necessary that the act shall include the consolidated city and county in order that the law shall have a general and uniform operation. The city and county of San Francisco is not a mere county, but is recognized in the constitution itself again and again as constituting a class apart. Of course, if it is a municipal corporation, and, therefore, the legislature cannot thus change its charter, this point need not be further discussed.

In my opinion the legislature did not intend to ordain that some of the officers should hold office for four years and others for two, there being no reason for the difference.

BEATTY, C. J., concurred in the dissenting opinion of Mr. Justice Temple.

Rehearing denied.