[S. F. No. 1974.    In Bank.—October 23, 1899.]

HENRY S. MARTIN et al., Appellants, v. BOARD OF ELECTION COMMISSIONERS OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

CITY AND COUNTY OF SAN FRANCISCO—EFFECT OF CONSOLIDATION ACT—MERGED AND CONSOLIDATED MUNICIPAL GOVERNMENT—CESSATION OF COUNTY.—The city and county of San Francisco were merged and consolidated into one municipal government by the consolidation act, and since its passage the city and county of San Fran-

cisco has been organized and existing as one body politic and corporate by that name and style, and the county of San Francisco has ceased to exist as a body politic or corporate. independently of and separate from the municipal corporation created by that act.

ID.—FREEHOLDERS' CHARTER—REGULATION OF COUNTY OFFICERS.—The city and county of San. Francisco, as a merged and consolidated municipal government, was authorized, under sections 7 and 8 of article XI of the constitution, to adopt a freeholders charter; and under section 8½ of that article, adopted in 1896, was authorized to fix in such charter the manner in which, the times at which, and the terms for which the several county officers shall be elected or appointed.

ID.—ADOPTION OF CONSTITUTIONAL AMENDMENTS—SUBMISSION UNDER GENERAL LAW.—There is no constitutional objection to the validity of the act of March 7, 1883, providing generally for the submission of constitutional amendments to the people; and it is not necessary that an amendment to the constitution be submitted specially by the legislature proposing the amendment.

ID.—CONSTRUCTION OF CONSTITUTION—SPECIAL AND GENERAL PROVISIONS. In the construction of the constitution, special provisions control the more general provisions; and the general and special provisions operate together, neither working the repeal of the other. Section 8½ of the constitution is valid and operative as to the cases therein specially provided for, notwithstanding the general provision of the constitution for laws establishing a uniform system of county and township government.

ID.—OPERATION OF COUNTY GOVERNMENT ACT.—The county government act does not apply, and never has applied, to the city and county of San Francisco, nor to the county of San Francisco, which has had no property, and has performed no functions or acts of a corporate body, since the passage of the consolidation act.

ID.—EFFECT OF FREEHOLDERS' CHARTER—SUPERSEDING OF INCONSISTENT LAWS.—The freeholders' charter of the city and county of ᴄan Francisco operates under section 8 of article XI, as amended, to supersede all laws inconsistent therewith, whether special or general.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   J. C. B. Hebbard, Judge.

The facts are stated in the opinion of the court.

George D. Collins, E. D. Peixotto, and Reddy, Campbell & Metson, for Appellants.

Franklin K. Lane, Henry N. Clement, and Garrett W. McEnerney, for Respondents.

VAN DYKE, J.—This action is in some measure connected with that of *Fragley v. Phelan,* involving the validity of the freeholders' charter, just decided. (*Ante,* p. 383.)

In the complaint of the plaintiffs it is stated: "That this action is not designed or intended to impeach the validity of the said charter in any respect, other than to have it adjudged herein that the provisions of said charter concerning the county officers of said city and county of San Francisco are in open and flagrant conflict with the constitution of the state of California, are an invasion of and an infringement upon the sovereignty of said state, are a revolutionary usurpation of power, and are a palpable violation of the law adopted by the legislature of said state, in obedience to the constitution, and entitled 'An act to establish a uniform system of county and township government,' approved April 1, 1897." A demurrer to the complaint was sustained by the court below, and, plaintiffs declining to amend, judgment was entered in favor of the defendants, from which judgment this appeal is taken.

The provisions of the freeholders' charter concerning the so-called county officers, in whose behalf this action is prosecuted, were inserted in said charter in pursuance of the amendment to article XI of the constitution, concerning counties, cities, and towns, and is entitled section 8½, adopted in 1896. By that amendment it is declared: "It shall be competent, in all charters framed under the authority given by section 8 of article XI of this constitution, to provide, in addition to those provisions allowable by this constitution and by the laws of the state, as follows: 4. . . . . Where a city and county government has been merged and consolidated into one municipal government, it shall also be competent in any charter framed under said section 8 of said article XI to provide for the manner in which, the times at which, and the terms for which the several county officers shall be elected or appointed, for their compensation, and for the number of deputies that each shall have, and for the compensation payable to each of such deputies."

By the act of the first legislature dividing the state into counties, passed February 18, 1850, the county of San Francisco was bounded on the south by the San Francisquito creek, and from the head of said creek due west to the ocean, and

three miles therein; and on the northerly end including all of
the present city and county; counties lying to the south being
Santa Clara and Branciforte; the latter was changed subse-
quently to the county of Santa Cruz.

At the same session of the legislature an act was passed
April 15, 1850, to incorporate the city of San Francisco. The
southern boundary line of said city, as thus incorporated, was
two miles distant from the center of Portsmouth square, "and
parallel to the street known as Clay street," and the western
boundary was a line a mile and a half in a westerly direction
from Portsmouth square, "and parallel to a street known as
Kearny street." The act provided for a complete organization
and a full set of officers for the city, independent of the county
officers of the county of San Francisco. The acts creating the
county, and also the city, were amended at subsequent sessions
of the legislature, and April 19, 1856, an act was passed "to
repeal the several charters of the city of San Francisco, to es-
tablish the boundaries of the city and county of San Fran-
cisco, and to consolidate the government thereof." By the first
section of said act it is provided that "the corporation or body
politic and corporate, now existing and known as the city of
San Francisco, shall remain and continue to be a body politic
and corporate in name and in fact, by the name of the city
and county of San Francisco, and by that name shall have per-
petual succession, may sue and defend in all courts and places,
and in all matters and proceedings whatever, and may have
and may use a common seal, and the same may alter at pleas-
ure; and may purchase, receive, hold, and enjoy real and per-
sonal property, and sell, convey, mortgage, and dispose of the
same for the common benefit."

By the second section it is provided that "the public build-
ings, lands, and property, all rights of property and rights of
action, and all moneys, revenues, and income belonging or ap-
pertaining either to the corporation of the city of San Fran-
cisco, or to the county of San Francisco, are hereby declared
to be vested in, and to appertain to, the said city and county
of San Francisco; and the moneys in the treasury of said city,
and in the treasury of said county of San Francisco, and all
the revenues and income from whatsoever source arising, in-
cluding delinquent taxes upon persons and property appertain-

ing to the said city or to the said county, shall be handed over, paid, and received into the treasury of the city and county of San Francisco as a part of the general fund."

The boundaries of the new municipal corporation designated as the city and county of San Francisco were fixed as at present, and there was formed out of the southern portion of the county of San Francisco the county of San Mateo; and the eighth section of the act dividing the state into counties, providing for the formation of the county of San Francisco, was repealed. It was further provided in said act that the existing provisions of law defining the powers and duties of county officers, excepting those relating to supervisors, so far as the same were not repealed or altered by said act, should be considered as applicable to the officers of said city and county of San Francisco, and among the enumerated officers to be elected for said new municipal corporation were, in addition to purely city officers, the officers formerly designated as county officers.

From the passage of the consolidation act to the constitutional convention of 1878-79 the city and county of San Francisco had been a subdivision of the state, and as such, and by that name and style, organized and existing as a body politic and corporate. Its charter—the consolidation act—had been added to and amended, but the general form and substance of the municipal government had not been changed. And since the passage of the consolidation act the county of San Francisco has ceased to exist as a body politic or corporate, independently of, and separate from, the municipal corporation created by that act, and known and designated as the city and county of San Francisco.

One of the contentions on the part of the appellants is, that although the former city and county were consolidated they were not "merged" within the meaning of the constitution. As already shown, the consolidation act repealed the various acts creating and amending the charter of the city of San Francisco, as well as the provisions of the act creating the county of San Francisco; and all the funds and property of every kind theretofore belonging either to the city or county became vested in and belonged to the new municipal corporation known as the city and county of San Francisco. It would seem difficult to more effectually merge two separate bodies into one. Besides, in the constitutional convention of 1878-79

the city and county of San Francisco was referred to and treated as a merged and consolidated municipal government, and it was then, as now, the only municipal government of that kind in the state. That portion of section 7 of article XI of the constitution, where merged and consolidated municipal governments are referred to has not been changed since it was reported to the convention by the committee on municipal corporations; and the debates show that the terms there used referred to a municipal government like that of the city and county of San Francisco. During the debate on the various amendments proposed to that portion of section 7 referring to the two houses of legislation (since omitted by constitutional amendment), Judge Hager, the chairman of the committee, in replying, said: "I had no idea that this section was going to create so much difficulty in the convention, or receive so much apparent opposition. The section as drawn was intended to be for the city of San Francisco." (Debates of the Constitutional Convention, p. 1058.)

These remarks of Judge Hager were not questioned by any member, and it is fair, therefore, to assume that the convention understood that when using the term "merged and consolidated into one municipal government" it had reference at that time only to the city and county of San Francisco, and also to any similar consolidated corporation that might thereafter be created. When the following section, 8 (then section 9), providing for freeholders' charters, was under debate, Judge Hager remarked: "This applies strictly and only to the city and county of San Francisco." (The section originally required a population of more than one hundred thousand to entitle the inhabitants of such city to frame such a charter.) He further said: "I cannot see that any evil will come from it; we have this peculiar government there, a consolidated city and county government. I do not agree with my friend from Sacramento, that the tendency is to multiply offices. The tendency is to reduce the number of offices. Instead of having a set of city officers and a set of county officers, they are consolidated. We have a sheriff who is the sheriff of the county and of the city. . . . . We have a tax collector, and we have an auditor that acts for both; formerly, we had one for each. The tendency of a consolidated government is to reduce the offices

from two to one in every case, and reduce the expense in every particular, and not, as the gentleman said, for the purpose of multiplying offices."

It is further contended by the appellant that section 8½ of article XI is invalid, for the reason that it was submitted to the people under the general law, passed March 7, 1883, providing for the submission of constitutional amendments, instead of being submitted specially by the legislature proposing the amendment. (Stats. 1883, p. 53.)

This contention is entirely untenable; the amendment to section 6 of the same article, by the insertion of the words "except in municipal affairs," was submitted and adopted at the same time and in the same manner as section 8½, now under consideration, and the validity of that amendment has been considered and sustained by this court. Besides, there are many other amendments that have been in like manner submitted and adopted since the passage of the act of 1883. There is no constitutional objection to the passage of such an act, and that being the case, it is entirely proper for the legislature to provide by general, instead of special, legislation for submitting constitutional amendments to the people.

The causes leading up to the adoption of constitutional amendment section 8½ are well known. In the freeholders' charter of the city of Los Angeles provision was made for the establishment of a police court and the election of judges thereof. In *People v. Toal*, 85 Cal. 333, it was held by this court that such provision of that charter was invalid, for the reason that inferior courts, including police courts, could only be established as provided by article VI, concerning the judicial power of the state, and that it is there provided that the legislature may establish inferior courts in any incorporated city or town, or city and county; and this meant that an act must be passed by the legislature in the form and manner prescribed in article IV, legislative department; and that the approval of the freeholders' charter by a vote of the two houses of the legislature was not equivalent to the passage of a law as provided in said legislative article. Hence the new section, 8½, of article XI, of the constitution, subdivision 1, confers in express terms the power to provide in freeholders' charters "for the constitution, regulation, government, and jurisdiction of police courts,

and for the manner in which, the times at which, and the terms for which the judges of such courts shall be elected or appointed, and for the compensation of such judges and their clerks and attaches." And to remove any doubt that may have previously existed concerning the status of officers of the class prosecuting this action, in merged and consolidated municipalities, it is further expressly provided in the amended section 8½ that it should be competent in a freeholders' charter of such consolidated government to provide for the election of such officers for such municipality. There is no room for doubt, therefore, as to the purpose of the legislature in proposing said amended section 8½, of article XI, or of the people in voting upon and approving the same.

It is contended, however, on the part of the appellants that the provisions of said amended section 8½ under consideration cannot be carried out, for the reason that it would conflict with the general law of the state establishing a uniform system of county and township government; in other words, that the law (and a freeholders' charter adopted as provided for in the constitution is a law of the highest grade) cannot be passed, although in pursuance of express power granted by the constitution, because it may, perhaps, infringe upon some other law. The rule of construction invoked by appellants seems to be that a provision in a law or constitution in reference to a particular matter is inoperative and void if it be inconsistent with the general provisions of said law or constitution. The direct opposite is the true construction in such cases.

"The more specific provision controls the general, without regard to their comparative dates; the two acts operating together, and neither working the repeal of the other." (Bishop's Written Laws, secs. 112-26; *Desmond v. Dunn*, 55 Cal. 247; Dwarris on Statutes, 765; Cooley's Constitutional Limitations, 63; *Commonwealth v. Council of Montrose*, 52 Pa. St. 391; *Coxe v. State*, 144 N. Y. 396; *People v. Keller*, 157 N. Y. 97; *State v. Kelly*, 34 N. J. L. 75; *McGavisk v. State etc.*, 34 N. J. L. 509; *State v. Inhabitants etc. of Trenton*, 38 N. J. L. 64; *Crane v. Reeder*, 22 Mich. 323.)

Under this rule of construction it would be immaterial whether the general county government act applies to the county of San Francisco or not; for although said new section 8½ of article XI

may conflict with other sections of the same article providing
for a uniform system of county and township government, it
would still be valid as to the particular cases for which it is in-
tended, for in such case the particular and the general both
stand together—neither abrogates the other—the former fur-
nishing the rule for the freeholders' charter, the latter for all
other cases.

But the act establishing a uniform system of county and
township government does not, and never has, applied to the
county of San Francisco, in the sense claimed by the appellants.
The first section provides that the several counties of this state,
as they now exist, and such others as may be hereafter organ-
ized, are bodies corporate and politic, and, as such, have the
power specified in said act; among these are the power to sue
and to be sued, to purchase and hold land within its limits, to
make contracts, and purchase and hold such personal property
as may be necessary to the exercise of its powers, to manage and
dispose of its property as the interests of its inhabitants may re-
quire, to levy and collect such taxes as are authorized by law.
The county of San Francisco, as already shown, since the pass-
age of the consolidation act, has never, as such, owned or pos-
sessed any property or performed any of the acts of a corporate
body. Further, the general law provides that "each county
must have a board of supervisors consisting of five members."
The county of San Francisco never has had such a board, or
any board of supervisors since the consolidation act. The gen-
eral county government act also provides for justices of the
peace and constables in the several townships of the county, and
there are no justices of the peace or constables in the townships
of the county of San Francisco, since there are no townships in
San Francisco. In fact, it is too obvious for question or argu-
ment that the general law establishing a uniform system of
county government does not apply to the city and county of
San Francisco. Further, section 8 of article XI, as it now
stands, declares that when said charter is approved as therein
provided, "it shall become the charter of such city, or if such
city be consolidated with a county, then for such city and
county, and shall become the organic law thereof and supersede
any existing charter, and all amendments thereof, and all laws
inconsistent with such charter." As the section originally stood

it read: "All special laws inconsistent with such charter." The purpose of the amendment is in line with other amendments to the other sections of the article in question, and would seem to remove all doubt that such charters are not subject to existing laws, whether general or special.

Judgment affirmed.

McFarland, J., Garoutte, J., Beatty, C. J., and Harrison, J., concurred.

Temple, J., concurred in the judgment.

McFARLAND, J.—I concur in the judgment solely on the ground that the constitutional amendment—section $8\frac{1}{2}$—definitely settles the question involved in favor of the contention of respondents.