[S. F. No. 2553. In Bank. — April 6, 1901.]

## TIMOTHY J. CROWLEY, Respondent, v. J. RICHARD FREUD et al., Appellants.

CHARTER OF SAN FRANCISCO — CIVIL SERVICE COMMISSION — COUNTY OFFICERS — QUALIFICATIONS OF DEPUTIES. — The civil service commission established under the new charter of the city and county of San Francisco has no power to prescribe the qualifications of deputies of the county officers, such as the sheriff, county clerk, recorder, etc., and cannot compel those officers to select deputies from persons named by that commission. [Beatty, C. J., Van Dyke, J., and Temple, J., dissenting.]

ID. — DISTINCTION BETWEEN COUNTY AND MUNICIPAL OFFICERS — CASE AFFIRMED. — The case of *Kahn* v. *Sutro*, 114 Cal. 316, distinguishing between the functions of county officers and those of municipal officers under the consolidated municipal government of the city and county of San Francisco, was not overruled or materially modified by the case of *Martin* v. *Election Commissioners*, 126 Cal. 404, and is affirmed. [Beatty, C. J., Van Dyke, J., and Temple, J., dissenting.]

ID. — CONSTRUCTION OF CONSTITUTION — POWER OF CITY AND COUNTY UNDER CHARTER. — The power conferred by section $8\frac{1}{2}$ of article XI of the constitution upon a consolidated municipal government of a city and county, under a charter framed therefor, over county officers, goes only to the extent of allowing it to provide for the manner of their election, and their terms of office and compensation, and to provide for the number of deputies that each county officer shall have, and for the compensation payable to such deputies. It confers no power upon the municipality to prescribe the qualifications of such deputies. [Beatty, C. J., Van Dyke, J., and Temple, J., dissenting.]

APPEAL from orders of the Superior Court of the City and County of San Francisco granting injunctions. J. C. B. Hebbard, Judge.

The facts are stated in the opinion of the court.

Franklin K. Lane, and Garret W. McEnerney, for Appellants.

Henry N. Clement, *amicus curiæ*, for modification of injunctions.

Garber, Creswell & Garber, Campbell & Metson, George D. Squires, and Isaac Frohman, for Respondent.

McFARLAND, J.—The only question presented in this case is, whether the consolidated municipal government called the city and county of San Francisco can, through its civil service commission, prescribe the qualifications of deputies of certain county officers, such as sheriff, county clerk, recorder, etc., and compel those officers to select their deputies from persons named by said commission. The court below held that there is no such power, and in accordance with such ruling made certain restraining and enjoining orders, from which defendants appeal. The power in question does not exist, unless it is granted in that clause of section $8\frac{1}{2}$ of article XI of the state constitution, adopted in 1896, which is as follows: "Where a city and county government has been merged and consolidated into one municipal government, it shall also be competent, in any charter framed under said section 8 of said article XI, to provide for the manner in which, the times at which, and the terms for which the several county officers shall be elected or appointed, for their compensation, and for the number of deputies that each shall have, and for the compensation payable to each of such deputies."

It is scarcely necessary to again consider at length the position of appellants,—so elaborately discussed and so clearly held to be untenable in *Kahn* v. *Sutro*, 114 Cal. 316,—that there is no such thing as "county officers" in that part of the state which is included within the boundaries of the city and county of San Francisco; for the clause of section $8\frac{1}{2}$ of the constitution above quoted directly recognizes such officers, and expressly calls them "county officers," and the whole clause deals with *county officers* and their deputies, and with no other subject whatever.

In the opinion in *Kahn* v. *Sutro*, *supra*, the citation of authorities is very full, and it would be a mere waste of labor to restate here the reasoning there employed, or again refer to the authorities there cited. That case establishes the law as to the matters therein determined. It is proper, however, to notice the contention of appellants, that *Kahn* v. *Sutro* has been overruled or materially modified by the subsequent case of *Martin* v. *Election Commissioners*, 126 Cal. 404. There is no foundation for this contention. *Kahn* v. *Sutro* was decided before section $8\frac{1}{2}$ had become a part of the constitution, and it was there held that, under the constitution and the statutes as they then stood, the terms of office and the times of election of

county officers were fixed by the general state laws on the subject; but the Martin case was decided after section $8\frac{1}{2}$ had been adopted, and was based entirely on the amendment made by that section, which expressly makes the law as to the election, etc., of county officers different from the law as it stood on that subject when *Kahn* v. *Sutro* was decided. The Martin case was brought by certain county officers in San Francisco, upon the theory that the adoption of section $8\frac{1}{2}$ had not changed the law declared in *Kahn* v. *Sutro* as to the time of their election and their terms of office; and this court held in the Martin case that those things had been changed by section $8\frac{1}{2}$, because it declared that it was competent to provide in the charter of a consolidated city and county government "for the manner in which, the times at which, and the terms for which the several county officers shall be elected." This was the only question involved and the only question decided,—the only question to which the minds of the court were directly called and upon which they directly acted. The contention of appellants is based mainly upon one or two expressions to be found in the opinion in the Martin case. One of these, and the main one, is as follows: "But the act establishing a uniform system of county and township governments does not, and never did, apply to the county of San Francisco, *in the sense claimed by the appellants.*" This, however, is not saying that it does not apply *in any sense.* And what *was* the sense in which appellants in that case claimed such application? They "claimed," briefly stated, as follows: Section 6 of article XI provides that all municipal charters shall be, except in municipal affairs, "subject to and controlled by general laws"; county officers not being within the exception of "municipal affairs," the County Government Act, which provides for their election, time of office, etc., "controls the provisions of the charter on that subject"; and section $8\frac{1}{2}$ can be kept out of conflict with section 6 only by a construction which is stated in appellants' brief in the Martin case in this language: "The only construction admissible, therefore, is that which renders section $8\frac{1}{2}$ subject to section 6 by permitting a charter to provide for the appointment, election, tenure, and compensation of county officers and their deputies, only where *there is no general law on the subject;* the charter to be superseded in that respect whenever a general law is adopted." They also contended that section $8\frac{1}{2}$ could not be legally adopted as an

"amendment," and that what was attempted thereby could only be done through a general revision by a constitutional convention. And they argued that, for the foregoing reasons, and for many others which were urged, section 8½ is not an existing amendment, and therefore the County Government Act applies to San Francisco *for all purposes*. The above views of counsel show the application of the County Government Act to San Francisco, "in the sense claimed by the appellants." But the court did not agree with these views, and held that section 8½ was a valid amendment, and that by its express terms it provides for the election and terms of office of the county officers of the city and county of San Francisco; and it is with respect to the contentions of appellants in the Martin case that the expression above quoted must be taken. And a somewhat broader expression in the opinion, following closely after the one above noticed, must be taken as subject to the same qualification as the first. It is nowhere in the opinion stated that there are no county officers in the city and county of San Francisco; on the other hand, it recognizes the existence of such officers, as section 8½ itself does. For instance, in the constitutional convention, Judge Hager, in replying to the objection that consolidated governments multiplied offices and increased expenses, said that the opposite was the result, and referred to the consolidated government of San Francisco as sustaining his position; and in the opinion in the Martin case, the following, from his remarks, is quoted, "We have a sheriff who is sheriff of *the county* and of the city. . . . We have a tax-collector and we have an auditor that acts *for both*; formerly, we had one *for each*." Whether there were county officers in San Francisco was not a question in the Martin case, and there was no pretense of overruling *Kahn* v. *Sutro* on that subject; the only question involved was, When are *county officers* to be elected? and what are their terms of office? *Miller* v. *Curry*, 113 Cal. 644, is to the same effect as *Kahn* v. *Sutro*.

The fact that in a consolidated city and county there is neither a separate county governmental organization, nor a separate city governmental organization, each distinct from and entirely independent of the other, — as there is in ordinary counties and cities, — was as fully recognized in *Kahn* v. *Sutro* as in *Martin* v. *Election Commissioners*. There is no conclusiveness in the argument that there can be no county officers

for a consolidated government because to hold otherwise would be to violate the original section 4 of article XI of the constitution, which contemplates a "uniform" system of county governments; for other provisions of the constitution, mostly amendments, and particularly section $8\frac{1}{2}$, which are specific provisions on the subject, allow such want of uniformity in the case of a consolidated city and county government, and expressly apply provisions to county officers in such consolidated government which do not apply to officers in other counties.

Not only is the state itself interested in county officers as parts of its necessary governmental machinery, but the people of any particular county of the state are interested—and some of them are frequently deeply interested—in county officers, such as sheriffs, recorders, clerks, etc., in other counties. The functions of such officers are general, not municipal. And while, in the American system of state governments, the people of the whole state have generally kept in their own hands control over such important public governmental agencies as county officers, still, if they choose to yield up part of that control by adopting a constitutional amendment such as section $8\frac{1}{2}$, there is no apparent reason why they may not do so, unless the amendment should be so revolutionary as to be destructive of a republican form of government, as the same is understood in this country. Section $8\frac{1}{2}$ cannot be said to be of that character. But when the people of the whole state have thus yielded up part of their sovereign power to a local municipality, the grant will certainly not be carried, by construction, to any greater extent than the words of the granting amendment clearly go. By section $8\frac{1}{2}$, power over county officers is given to the municipality, only to the extent of providing for the manner of their election, and their terms of office and compensation. As to their deputies,—and they alone are involved in this action,—the only power granted is to provide "for the number of deputies that each shall have, and for the compensation payable to each of such deputies." By no reasonable stretch of construction can this be held to include the power to prescribe the *qualifications* of such deputies, by any mode or process whatever.

The foregoing views are conclusive of the case in favor of the respondent; and it is not necessary to pursue in detail the

various points and arguments made by counsel for either side
in support of their respective contentions.

The orders appealed from are affirmed.

Harrison, J., Henshaw, J., and Garoutte, J., concurred.

Beatty, C. J., dissented.

VAN DYKE, J., dissenting.—I dissent. *Martin* v. *Election Commissioners*, 126 Cal. 404, fully expresses my views concerning the nature of the consolidated government styled the city and county of San Francisco. As was there pointed out, by the Consolidation Act passed in 1856 the act dividing the state into counties, so far as the same related to the formation of the county of San Francisco, was repealed, and the provisions of law defining the powers and duties of county officers, excepting those relating to supervisors, were considered as applicable to the officers of said city and county of San Francisco, and all the property and property rights of the former city and the former county of San Francisco were transferred to and vested in the new corporate body designated the city and county of San Francisco. All the officers who, prior to that time, had been simply county officers, and those who had been purely city officers, were thenceforth alike officers of the new municipal corporation, and were thereafter neither officers of the city of San Francisco nor officers of the county of San Francisco. As remarked in the dissenting opinion in *Kahn* v. *Sutro*, 114 Cal. 316, "In no sense can ⅈt be said that some were county officers and some were city officers. The sheriff and county clerk are as much officers of the municipal corporation as the mayor or the police judge. Whatever may be said of their powers and duties, they are part and parcel of the corporate organization known as the city and county of San Francisco." At that time the legislature was not restricted by constitutional limitations, and could do just what it did do,—to wit, merge and consolidate the former city of San Francisco and the former county of San Francisco into one body, under the name and style of the city and county of San Francisco, and thereupon wipe out of existence each of the former public corporations.

The present constitution in many ways recognizes the existence of this consolidated local government. For instance, in the judiciary article it is provided that "there shall be in each of the organized counties, or cities and counties, of the

state a superior court, for each of which at least one judge shall be elected by the qualified electors of the county, or city and county, at the general state election; provided, . . . that in the city and county of San Francisco there shall be elected twelve judges of the superior court"; and it is further provided for the classification of the twelve judges of the superior court of the city and county of San Francisco. But for the *county* of San Francisco, as distinguished from the subdivision of the state known as the "city and county," no court is provided by the constitution, either court of record or inferior court, and no sheriff, clerk, or other officer incident to a court is therefore required. Judge Hager, chairman of the committee which reported the article of the constitution in reference to counties, cities, and towns, speaking in defense of the consolidated government of the city and county of San Francisco, said: "The tendency is to reduce the number of officers. Instead of having a set of city officers and a set of county officers, they are consolidated. We have a sheriff who is the sheriff of the county and of the city. We have a tax-collector and we have an auditor that acts for both. Formerly we had one for each. The tendency of consolidated government is to reduce the offices from two to one in every case, and reduce the expenses in every particular."

Since the Consolidation Act there has not been, nor is there now, any county of San Francisco. Necessarily, there can be no officers of a county that does not exist. Besides, it was expressly provided that the officers formerly known and recognized as county officers were constituted officers of the new body politic,— to wit, the city and county of San Francisco,—and they have continued to be such up to and since the adoption of the present freeholders' charter. Being officers of the city and county of San Francisco, recognized as such under the freeholders' charter, they are subject to its provisions, the same as the officers who, before the consolidation, were known and recognized as officers of the city of San Francisco. Although *Kahn* v. *Sutro, supra,* was not overruled, in terms, in *Martin* v. *Election Commissioners, supra,* yet the effect is the same; the two cases are not in harmony, and cannot stand together.

A question had arisen whether so-called county officers were subject to the County Government Act, or whether they were officers of the consolidated municipal government, in like

manner as though they belonged strictly to a city government, and one purpose, evidently, of the adoption of the new section 8½ of article XI of the constitution was to set this controversy at rest, and the plain meaning of subdivision 4 of said new section is to put the so-called county officers in the same category as those formerly known as city officers.

Public policy favors local self-government, and the popular sentiment in this respect is constantly strengthening; this is manifest by the constitution of 1878–79, and by the repeated amendments thereto proposed by the legislature and adopted by the people. And it may also be said that the popular tendency is in favor of the merit system in the appointment and tenure of all subordinate officers in the civil service. Bearing these facts in mind, the court should adopt a liberal line of construction, and resolve all doubts in favor of such recognized public policy, and sustain the freeholders' charter in its integrity, instead of weakening it in a vital part.

Temple, J., concurred in the dissenting opinion.

Rehearing denied.