F. C. MALTBY *et al. vs.* M. C. TAUTGES.

Argued May 20, 1892. Decided June 22, 1892.

**Equality in Taxation.**

> Sp. Laws 1889, ch. 197, is not in conflict with the constitution, Art. 9, § 1, requiring equality and uniformity of taxation.

**Taxing Districts for Roads.**

> Where, in the reasonable judgment of the legislature, certain territory is specially interested in the construction of a highway, but some localities in that territory more interested than others, it is competent for the legislature to divide the territory into different taxing districts, and apportion the burden of the improvement among them in accordance with

their respective interests. The provision of the constitution, as to equality of taxation, does not require in such case that the rate of taxation in the different taxing districts shall be the same.

Same—Formation of.

Nor is it essential that the boundaries of the taxing districts shall conform to those of the political subdivisions of the state.

Appeal by plaintiffs, F. C. Maltby, James A. Smith, and D. L. Thompson, from an order of the District Court of Dakota County, *Crosby*, J., made November 6, 1891, sustaining a demurrer to their complaint.

Plaintiffs, on October 9, 1891, brought this action, as taxpayers, against defendant, M. C. Tautges, as County Auditor of Dakota County, to enjoin him from including in the tax rolls of that year a tax to pay a third of the $7,000 bonds issued by Dakota County under Sp. Laws 1889, ch. 197, § 3, as amended by Sp. Laws 1891, ch. 359. At the time of issuing the bonds on July 27, 1891, the Board of County Commissioners of Dakota County determined that certain townships and parts of townships named, should be assessed to pay the bonds and interest, in three equal annual installments, commencing with the year 1891.

The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The court sustained the demurrer, and plaintiffs appealed to this court.

Sp. Laws 1889, ch. 197, as amended by Sp. Laws 1891, ch. 359, enacts that the Board of County Commissioners of Dakota County are authorized and directed to issue and sell the bonds of that county to the amount of $7,000; the proceeds to be used in constructing, a road and approach, to a bridge over the Minnesota River; the bonds to be in such sums, and payable at such times, and bearing such interest, as the Board should determine. The Board is required at the time of issuing the bonds to determine what townships or parts thereof shall contribute to the payment of the bonds and the amount to be contributed by each, and to provide for the payment of the bonds by levy of the necessary tax therefor.

*Hodgson & Schaller*, for appellants.

*J. N. Searles* and *E. A. Whitford*, for respondent.

MITCHELL, J. This action was brought to enjoin the defendant, as county auditor, from extending a certain tax on the tax lists. The only question raised on this appeal, which is from an order sustaining a demurrer to the complaint, is the constitutionality of this tax.

Sp. Laws 1889, ch. 197, as amended by Sp. Laws 1891, ch. 359, authorized the board of county commissioners of Hennepin county to issue and sell $50,000 of county bonds, and expend the proceeds in constructing a bridge over the Minnesota river, (and approaches thereto,) on the boundary between Hennepin and Dakota counties; the bridge to be located by the commissioners of the two counties at either of two specified places, as in their judgment should be best.

The commissioners of Dakota county were then directed to issue and sell $7,000 county bonds, and use the proceeds in the construction of the road and approach, in that county, leading to the bridge; also, at the time of issuing the bonds, to determine what townships, or parts thereof, in the county should contribute to the payment of the bonds, and the amount to be so contributed and paid by each; also to levy the necessary tax therefor on the taxable property in the townships so designated to be taxed for that purpose.

The complaint alleges that the county commissioners of Dakota county have issued and sold the bonds and expended the proceeds in constructing the road and approach to the bridge, as provided in the act, which are located entirely within the township of Burnsville; that at the time of issuing the bonds the board determined and designated certain towns and parts of towns (seventeen in number) as those which should contribute to their payment, and also designated the amount which each should contribute, and directed the levy of a tax for that purpose upon all the property in the towns thus designated.

The towns and parts of towns thus designated contain less than half the taxable property in the county, and the amount which each is to pay was not apportioned upon the basis of the taxable property in each, respectively; hence the rate of taxation for this improvement is not equal and uniform in the different towns. While it is alleged that the tax is not equal and uniform, and that much of the

property taxed for that purpose is not benefited by this road, yet it is not alleged that the board of commissioners, in determining and designating the towns which should contribute to the payment of these bonds and in apportioning the amount among the towns thus designated, acted either fraudulently or arbitrarily, or did not exercise their best judgment in determining what towns, or parts of towns, were specially interested in the proposed improvement, and the proportion in which each was thus interested.

It is not questioned, and under the authorities could not be successfully, but that, where a tax is levied for some special or extraordinary purpose, such as this, and where, in order to determine and fix the taxing district or districts and apportion the tax among them, it is necessary to enter upon such inquiries as to facts as cannot well be made directly by the legislature, it is competent to refer the matter to the local authorities, or to a commission appointed for that purpose, to fix the taxing district or districts and to apportion the tax.

Hence this case stands upon precisely the same footing as if the towns or parts of towns which were to contribute to the expense of building this road had been designated, and the expense apportioned among them, by the legislature itself.

The validity of the tax is assailed on the ground that it is not equal and uniform, as required by the constitution, plaintiffs' contention being that the county could not be thus divided, and this tax levied on only a part of it, or, even if this could be done, that the tax must be equal and uniform throughout the whole of the portion taxed, and that different rates of taxation for the same purpose could not be imposed on different districts.

It is proper at this point to refer to the purpose and policy of the act of 1889. Its evident object was to provide for the construction of a great highway across the Minnesota river between the two counties. In view of the large expense incident to bridging the river special legislation was deemed necessary. Hennepin county, being deemed to have the greatest special interest in the improvement, was required to pay the greater part of the expense, to wit, the expense of the bridge and the approaches, etc., on its side of the river, while

the road and approach on the Dakota side of the river was to be built by the territory on that side supposed to be specially benefited.

The legislature, evidently being of opinion that only a part of Dakota county was specially interested in this improvement, and that of the part thus interested some localities would be more benefited than others, determined to impose the tax to pay the expense only on the territory which they deemed specially interested, and to apportion it among the different districts within that territory in accordance with their respective interests in the improvement. This, we think, it was competent for the legislature to do, without at all violating the constitutional requirement as to equality and uniformity of taxation.

The purpose to be accomplished by a tax must, of course, pertain to the district taxed. The purpose must be one which pertains in an especial manner to the district taxed, and which concerns the people of that district more particularly than it does others. Generally the nature of the case will itself conclusively fix the taxing district. For example, if the tax is to pay general state expenses, the whole state will be the taxing district. If it be to pay the general expenses of a county or city, the whole county or city, respectively, will be the taxing district. But, where the nature of the case does not conclusively fix it, the power to determine what shall be the taxing district for any particular burden is purely a legislative power, and not to be interfered with or controlled (except as it may be limited or restrained by constitutional provisions) unless in very extreme and hardly supposable cases, where it clearly appears that the tax in no way pertains to the district taxed, and that it was imposed and apportioned without any reference whatever to any special interest on the part of such district in the purpose to be accomplished. Under the general laws of the state, the burden of constructing and maintaining highways primarily rests upon the towns in which the needed improvement is made. This is supplemented by authority to the counties to assist in the work. Consequently, under the general laws, the townships and counties are the taxing districts for highway purposes. But these purposes do not so peculiarly pertain to the towns and counties in their corporate capacity as to limit the legislature to this

method of taxation.   Taxing districts may be as numerous as the purposes for which the taxes are levied; and it is not essential that the political divisions of the state shall be the same as the taxing districts, but special districts may be established for special purposes, wholly ignoring the lines of the political subdivisions of the state. It is compulsory that these political subdivisions shall be regarded in taxation only where the tax itself is for a purpose specially pertaining to one of them in its political capacity.

The construction of highways and bridges furnish one of the most common occasions for special legislation creating special taxing districts, frequently several in number, and often overlying each other. Different taxing districts, for the same general purpose, may be thus created where there are peculiar reasons why one part of the public should bear a proportion of the burden greater than that which should be borne by another, and a greater rate of taxation be imposed on some districts than on others.   This does not violate the principle of equality and uniformity of taxation, if the establishment of several districts has only equality and justice in view.   That principle only forbids two rules of apportionment for the same tax in the same district.

If a certain territory is specially interested in a highway or bridge, but some localities in that territory interested more than others, there is nothing in the way of the legislature imposing the burden of the expense on the territory thus specially interested, regardless of the lines of political subdivisions of the state, and of apportioning that burden among the different localities in that territory in accordance with their respective interests, and establishing different taxing districts for that purpose.   The power of taxing and the power of apportioning taxes are inseparable.

And, to give locality to a purpose in respect to which a public expenditure is to be made, it is not essential that the public work created by means thereof should have its *situs* within the district. It is the district's *interest* in the improvement, and not its location, which is the test whether an object is or is not a proper subject of district taxation.   Hence the fact that the road constructed in this case was located wholly in one of the towns taxed is not important.

We fail to see any distinction in principle between the facts in this case and those in *Guilder* v. *Town of Otsego*, 20 Minn. 74, (Gil. 59.) In that case the legislature created four taxing districts—the towns of Otsego and Dayton and the counties of Wright and Hennepin— for the purpose of paying the expense of building a bridge. The cost of improvement was apportioned among the four, without regard to the amount of taxable property in each. Consequently the rate of taxation in the several districts was neither equal nor uniform. In that case the legislature itself directly fixed the taxing districts, and apportioned the tax, and the boundaries of the taxing districts happened to coincide with the boundaries of certain political subdivisions of the state, and the improvement created by the tax had its *situs* in part in each of the taxing districts, while in this case the power to fix the districts and apportion the tax was delegated to the local authorities of the county, and the boundaries of one district did not coincide with those of any political subdivision of the state, and the improvement created by the expenditure of the tax had its *situs* wholly in one of the taxing districts. But, as we have already indicated, none of these facts are at all material.

It is urged that county bonds could have been issued only upon the ground that the purpose for which they were issued was a county one, and, if so, the entire county must have been taxed for their payment. We see no force in this. The funds were presumably needed before they could be realized from taxation, and the county was merely to pledge its credit in order to raise the money for that part of its territory which should constitute the taxing districts ultimately liable for its payment.

Order affirmed.

(Opinion published 52 N. W. Rep. 858.)