BENJAMIN F. SLUTTS v. R. P. DANA, County Treasurer, ET AL., Appellants.

**County bridges:** TAXATION OF PROPERTY: LIABILITY OF CITIES OF THE FIRST CLASS. Cities of the first class are segregated by the statute from the outside territory of the county, so far as the construction, maintenance and liability for bridges are concerned; and the territory outside the city is to be considered as the county for bridge purposes; and while its bridge indebtedness may be considered a county indebtedness, still the property of such cities is not taxable for building and repairing its bridges, or for the payment of its funding bonds issued for that purpose.

Deemer, J., dissenting.

**Statutes:** CONSTRUCTION. While a legislative construction of an act is entitled to consideration by the courts, still it is not binding; and where it appears that the construing act may have been passed simply to remove doubt as to the meaning of the previous statute the court will so consider it.

*Appeal from Wapello District Court.*— HON. ROBERT SLOAN, Judge.

SATURDAY, APRIL 11, 1908.

ACTION to enjoin and restrain defendant treasurer from collecting a tax upon plaintiff's property in the city of Ottumwa to pay certain bonds issued by Wapello county, and to enjoin the defendant board of supervisors from levying, or attempting to levy, any taxes upon the taxable property within the city of Ottumwa to pay either the interest or the principal of said bonds. The case was tried to the court, resulting in a decree for plaintiff, and defendants appeal. — *Affirmed.*

*W. W. Epps,* County Attorney, and *Mitchell & Hunter,* for appellants.

*Gilmore & Moon,* for appellee.

SHERWIN, J.— This is an action by a taxpayer in the city of Ottumwa, originally brought on his own behalf, but afterwards converted into an action on behalf of all citizens or taxpayers of the city of Ottumwa similarly situated, to restrain defendant county treasurer from collecting what is called a "bond tax" levied by defendant board of supervisors of Wapello county upon all the property in said county for the purpose of paying certain county bonds held by the Northwestern Mutual Life Insurance Company of Milwaukee, Wis., and to restrain defendant board of supervisors, its successors in office, from levying any future taxes upon said property for the payment of either the principal or the interest on said bonds. The holder of the bonds was not made a party to the proceedings, but the trial court, upon issue joined by defendants, granted plaintiff the relief prayed.

The facts are not seriously in dispute. The city of Ottumwa in Wapello county is a city of the first class. In January of the year 1898 the board of supervisors of Wapello county, by proper resolution, authorized the issuance of twenty county bonds, each for the sum of $1,000 due in blocks of five, October 1, 1904, October 1, 1905, October 1, 1906, and October 1, 1907. These bonds were known as "Wapello County Funding Bonds," and bore interest at the rate of 4½ per cent. These bonds were to take up certain warrants theretofore issued by the county. Another issue of fourteen bonds was made April 12, 1898, seven of them maturing October 1, 1908, and the other seven October 1, 1909. These bonds were either exchanged for county warrants, or the money received from the sale thereof was used in taking up outstanding warrants. These warrants had been issued against the bridge fund of the county for bridges either built or repaired after March, 1893, in that portion of the county outside the limits of the city of Ottumwa. The bonds were purchased in good faith and for full value by the life insurance company above-named, with-

out any suspicion, notice, or intimation that they did not constitute a valid indebtedness on the part of the county, and the said company is now the owner and holder of the twenty-four bonds remaining unpaid. The value of the taxable property in the city of Ottumwa is $9,818,304, and of that within the county and outside the city limits $15,-817,216. The bonds which have been paid were liquidated by taxes levied upon all the property in the county, and in September of the year 1905 defendant board of supervisors levied a three-mill tax upon all the property in the county subject to taxation to pay the aforesaid bonds and interest. That levy was extended upon the taxbooks for the year 1905, and this action followed.

It is conceded in argument that cities of the first class may build and repair bridges within their own limits at their own expense, and may levy taxes therefor upon all the property within their limits. Code, sections 758, 888. It is also conceded that under section 1303 of the Code the board of supervisors may levy taxes for the building and repair of bridges in that portion of the county outside of such cities, the levy being confined to property outside of the cities so excluded. Upon the original submission the appellants claimed, as they do now, that the board of supervisors had no authority to issue the bonds in question. This was conceded by the appellee, and it was upon the theory thus presented that the former opinion was based. The appellee now contends that the board had power to issue the bonds and to levy taxes for their payment, but only on the property outside of the city of Ottumwa. It is now further conceded by the appellee that, unless the bonds were legally issued, he has no case; and it is practically conceded by the appellants that, if they were issued with authority, property in the city of Ottumwa cannot be compelled to contribute to their payment, so far at least as the parties to this contest are concerned. Section 403 of the Code provides that: "Whenever the outstanding indebtedness of any county on

the first day of April in any year exceeds the sum of five thousand dollars, the board of supervisors . . . may fund or refund the same, and issue the bonds of the county therefor." It is therefore manifest that the ultimate question for determination as between the parties to this action is whether an indebtedness incurred for building and repairing bridges outside of cities of the first class is a county indebtedness within the meaning of section 403. If it is, and was before the enactment of chapter 16, Acts 30th General Assembly, the section itself was sufficient warrant for the bond issue in question.

In determining the question of county indebtedness it is equally as evident that the several provisions of the statute relating to the powers of a city of the first class and of the board of supervisors relating to building and repairing bridges be considered in their relation to each other. Subdivision 18 of section 422 of the Code gives the board of supervisors power " to provide for the erection of all bridges which may be necessary, and which the public convenience may require, within their respective counties, and to keep the same in repair, except as is otherwise provided by law." One of the exceptions to the power given in section 422 is to be found in section 758, which provides that: " Cities of the first class shall have full control of the bridge fund levied and collected as provided by law, and shall have the right to use the same for the construction of bridges, . . . repairing the same and paying bridge bonds and interest thereon issued by such city, and shall be liable for defective construction thereof, and failure to maintain the same in safe condition as counties now are with reference to county bridges; and no county shall be liable for any such bridge or injuries caused thereby." And section 888 gives cities of the first class power to annually levy a tax not exceeding three mills on the dollar to be known as the city bridge fund. Section 888 provides the city with means for exercising the power con-

1. COUNTY BRIDGES: taxation of property: liability of cities of first class.

ferred in section 758. And it is worthy of note that the amount of the levy is the same as the board of supervisors is authorized to make on outside property under section 1303 of the Code. Section 1303 expressly excepts cities of the first class from the provisions of section 422 by providing that the bridge tax therein authorized shall not be levied upon any property assessable within the limits of any city of the first class, and that none of such tax shall be used in the construction or repair of bridges within the limits of such city. These provisions of the statute clearly withhold from the board of supervisors all power and jurisdiction over bridges in cities of the first class, and as clearly vest the board with the power to build and repair bridges outside of such cities. Section 1303 expressly authorizes the board of supervisors to levy a tax on all property outside the limits of any city of the first class for making and repairing bridges, and this section and section 422 clearly relate to county bridges, and define what is meant thereby in the statute. So far, then, as bridges are concerned, the Legislature has removed cities of the first class from the jurisdiction of the board of supervisors and from the operation of the law governing the county as a quasi corporation, and, in our judgment, without in any way impairing the power of the board outside such cities. And if this be true, it seems to logically follow that the board may, in such cases, proceed to build and repair bridges within its jurisdiction just as it would if there were no city of the first class within the geographical boundaries of the county. In other words, the Legislature has said that, so far as bridges are concerned, a city of the first class is not a part of the county, and that the board of supervisors shall bridge and repair without reference thereto. That the Legislature may so ordain, within constitutional limitations, will hardly be questioned. "A county is a public corporation, which exists only for public purposes connected with the administration of the State government, and it and its revenues are alike,

where no express restriction is found to the contrary, subject to legislative control." *Raymond v. Hartford Fire Ins. Co.,* 196 Ill. 329 (63 N. E. 745); *Swartz v. Lake County Com'rs,* 158 Ind. 141 (63 N. E. 31). Under a statute prohibiting counties from subscribing for stock in any incorporated company, unless the same be paid for at the time of such subscription, it is held that cities, though an integral part of the county, are not intended to be included in the prohibition. *Thompson v. City of Peru,* 29 Ind. 305.

That certain territory may be a part of a county for some purposes, but not for all, is well settled. *State of South Dakota ex rel. Dollard v. Board,* 1 S. D. 292 (46 N. W. 1127, 10 L. R. A. 588); *Kahn v. Sutro,* 114 Cal. 316 (46 Pac. 87, 33 L. R. A. 620). But as we have heretofore said, it is a question of legislative intent, which intent is to be gathered from the entire statutory law on the subject; and the citation of foreign cases, based on different statutes, can aid but little in its solution. If for bridging purposes the territory outside Ottumwa is to be considered a county, it follows that the indebtedness created for building and repairing such bridges was a county indebtedness, and, under section 403, the board had the power to issue the bonds of the county for the purpose of redeeming its outstanding warrants. And if the property within the limits of the city cannot be taxed for building and repairing such bridges, it is difficult to see any reason for holding that it can be taxed to pay the bonds. Section 406 of the Code, which provides that the board of supervisors shall cause to be assessed and levied each year " upon the taxable property in the county . . ." a sufficient sum to pay the interest on outstanding bonds and such part of the principal as may be due, does not necessarily mean that such levy shall be made on all the property in the county, including that within cities of the first class. The section does no more than to require the levy to be made on the property in the county taxable for the purpose. It is of course true that ordinarily all property

in the county not exempt from taxation would be subject to such levy. But when the Legislature, by direct language, or by necessary implication, fixes the limits of the county for certain taxable purposes, whether such limits include all territory within the geographical boundaries of the county or not, it determines what property shall be taxable for the payment of the indebtedness of such county, and the board of supervisors has no power to enlarge or extend the taxing district.

Chapter 16, Acts 30th General Assembly, provides that, " in counties containing a city or cities of the first class, the indebtedness incurred in making and repairing of the bridges may be refunded whenever such out-standing indebtedness equals or exceeds the sum of five thousand ($5,000) dollars, the tax to pay such bonds, and interest to be levied under the provisions of section four hundred and six (406) of the Code, but only on the assessable property in the county outside of the limits of said city or cities of the first class"; and the appellants urge that the enactment of said chapter clearly shows the legislative construction placed upon the law as it theretofore stood. It is quite likely that the Legislature may have thought the power of the board in cases like the present not very clearly defined, and we cheerfully concede as much; but, notwithstanding this, we still think the board had the power when the bonds were issued, which is expressly con-ferred by chapter 16. While a legislative construction of an act is entitled to due consideration from the courts, it is by no means binding; and whenever it appears that the so-called construing act may have been passed simply for the purpose of removing doubt from previous acts the courts should so consider it. And such was, in our judgment, the purpose of the chapter.

The appellants now waive any question as to the bond-holder not being a party, and, as it is conceded that the taxable property outside the city of Ottumwa is over $15,-

200,000, it is apparent that the rights of the bondholder are not now in jeopardy. He cannot, of course, be concluded in an action to which he is not a party; and, if it shall hereafter develop that sufficient money to pay the bonds cannot be raised by levy on outside property, the holder of the bonds can undoubtedly be protected whenever he shall himself invoke the aid of the court.

We think the judgment below right, and it is *affirmed*.

DEEMER, J. (dissenting).— The case is now before us on rehearing. For former opinion, see 109 N. W. 794. Upon the original hearing counsel for appellee frankly conceded that the board had no authority to issue the bonds, and that, save for the doctrine of estoppel, the bonds were illegal and void. In the petition for rehearing the claim was made for the first time that the board had authority to issue them, and that they are payable from taxes levied upon property outside of the city of Ottumwa. Counsel for appellee just as frankly concede this change of front as they did the principles involved upon the original hearing. They are now relying upon the validity of the bonds, where, as upon the original hearing, they conceded their invalidity, and insisted that no taxes could be levied upon property within the city for the payment thereof. They now insist that the bonds are and were valid, but that taxes for the payment thereof should be levied upon property without the limits of the city of Ottumwa. Having presented their case upon one theory, and having obtained an adverse decision thereon, they should not on rehearing be permitted to change their premises, and insist upon a decision based upon an entirely distinct and contrary position. There must be an end to all litigation, and counsel are not now contending that the conclusion from the admitted premises upon the former submission is incorrect. Their insistence now is that they were wrong in their premises, and they ask us to change the conclusion accordingly. That this is not the purpose of a

rehearing see the following among other cases which are closely in point: *Hintrager v. Hennessy*, 46 Iowa, 604; *Mann v. Railroad*, 46 Iowa, 643. I do not think appellees have a right to present a new case upon rehearing.

Aside from this, I do not believe there was any authority in our statutes prior to Acts 30th General Assembly chapter 16, for boards of supervisors to issue long-time negotiable bonds for the purpose of funding an indebtedness incurred for the building or repair of bridges outside the limits of a first-class city, save as it might fund any purely county indebtedness. Prior to the act in question there was certainly no statute expressly giving the power, and without power expressly given municipalities cannot issue such a form of indebtedness. This is the general rule established by the great weight of authority and by an unbroken line of decisions from this court. More than this we have the legislative construction following from the adoption of the act of the Thirtieth General Assembly before referred to. The warrants which were refunded did not represent county indebtedness; but, if they did, then the bonds issued therefor must be paid out of the bond tax, and not some other levy. Nowhere is there any statute authorizing a bond tax upon a part of the property within a county save as found in the act of the Thirtieth General Assembly, which was passed after this cause of action arose. The bonds themselves did not state that they were to be paid out of a fund derived from a levy upon a part of the property within the county. On the contrary, the law expressly provided that they should be paid from a bond tax levy which was to be upon all the property within the county. Code, section 406 *et seq.* So that there was no authority to issue the bonds, nor was there any authority whatever to levy a tax upon a part of the taxable property within the county for the payment of these bonds. Under the provisions of section 406 of the Code the board of supervisors had express authority to levy a tax upon all the property within the county to pay the principal

and interest on outstanding bonds issued in conformity with
the provision of section 403 hitherto mentioned; the amount
realized from such levies being known as the "bond fund"
to be used for the payment of bonds and interest coupons,
and for no other purpose. If the board failed to make the
levy, provision is made for collection through the executive
council by a state tax. Code, section 408. If the bonds
were issued by authority of law, or if the county issuing
them is estopped from denying want of authority, which in
effect amounts to the same thing as if authority were granted
in the first place, we think it clear that the board of super-
visors had the right, and that it was its duty, under section
406 of the Code, to levy a tax upon all the taxable property
in the county for the payment of interest and principal of
the bonds. The case is different from one where the debtors
are jointly and severally and personally liable in this, that
the bondholder cannot sue the individual members of the
community. He must secure his money through the tax
levy either voluntarily or involuntarily made. The board
having authority to make a voluntary levy to pay these
bonds and the interest upon them, and having made a levy
with which to pay a part thereof, some of the parties liable
therefor cannot, in an action to which the bondholder is not
a party, by injunction against the collecting agents, destroy
the bondholder's right to have this tax collected and paid over
to it. But it is said that, as those persons living outside the
city limits were alone responsible for the bridge warrants,
they and they alone should pay these bonds. The fallacy
of this argument as applied to this case lies in the fact
that the bondholders in this case never were creditors until
they purchased the bonds. They never held any of the
bridge warrants, and their rights are upon the bonds, and
upon these alone. The bondholders stand in the position
of holding county bonds issued by authority of law, and
they are entitled to the statutory rights and remedies for the
enforcement of the same. In other words, they are entitled

to the tax already levied to pay the amount due on these bonds, and are entitled to have further and future levies made to take up all the obligations of the county held by them. I do not see how they can be deprived of their rights to have taxes levied to pay these obligations, which, so far as the county is concerned, are as valid as if they had been executed with express statutory authority. They were made for, and on behalf of, the entire county, and not for a fraction thereof. If this were not true, the bonds would not be valid, for, at the time they were issued, the board had no authority to issue bonds obligatory upon but a part of the inhabitants. Even now there seems to be no authority to levy taxes upon but part of the taxable property in the county to pay county bonds so issued as to bind all the inhabitants, or at least all the property therein. There seems to be no authority to levy taxes save as provided by law, although it may be true that a court, by mandamus or other special remedy, might require the levy of taxes to pay a judgment against the county. But here there seems to be no reason, if the bonds are valid, or are such as that the entire county is estopped from asserting their invalidity, why the levy should not be ordered against all the taxable property in the county.

But it is argued that the taxpayers in the city have had no benefit from the bonds, and that to compel them to pay either principal or interest would amount to a taking of their property for a local purpose in which they were not interested. If the bonds are valid, then they were issued for a public purpose. County bridges are undoubtedly matters in which the entire public is interested, although the particular individual may never have occasion to use them or any of them. For administrative purposes the county is sometimes, as in this case, divided into taxing districts, but the unit of taxation in these matters, generally speaking, is the county. The Legislature has the undoubted right to establish taxing districts, and, as a rule, its discretion in

this regard will not be interfered with. This inquiry is, however, collateral to the main question in the case, for the liability here is not upon bridge warrants, but upon county bonds, issued with authority, or in such a way as to be as binding upon the entire county, as if they had been issued with authority. The obligation which the bondholder has is an obligation of the entire county, and is to be collected as such obligations generally are, that is to say, by a levy upon all the taxable property in the county, or by following the provisions of section 408 of the Code. The tax when so levied will undoubtedly be for a public purpose, and the taxpayers within the city limits are not paying bridge warrants, but valid and enforceable obligations of the county. Whatever rights these parties may have as between themselves after they have contributed to the payment of obligations upon which each and all are liable, we need not nor can we now determine. That matter must of necessity be left until it is presented in a proper manner. There is no merit in the contention that the bondholder, had he been a party, might have consented to the decree in this case. It might, of course, forego all its right, and cancel its evidences of indebtedness. But we are not justified in assuming that it would waive or forfeit any of its legal rights. And injunction such as is sought in this case would so complicate matters that it should not be granted. If plaintiffs may thus escape the payment of taxes already levied, it is difficult to see how an adjudgment can be made which would protect the bondholder, as there is no authority of law for levying a tax upon part of the property of a county for the payment of county bonds, except under chapter 16, Acts 30th General Assembly, the board of supervisors would doubtless be unable to make any levy for the payment of these county bonds. None of the numerous cases cited by appellee's counsel run counter to the views above expressed. *Green v. Harrison County,* 61 Iowa, 311, was a personal injury case, and is in no way in point, and the same may be

said of *Dashner v. Mills County,* 88 Iowa, 401; *Mills County Bank v. Mills County,* 67 Iowa, 697, was an action upon two county warrants, one expressly payable " out of the Watkins ditch fund," and the other " out of the ditch fund."   A demurrer to the petition was sustained by the trial court, and the order was reversed upon appeal to this court.   It is said in that case that these warrants were payable out of a special fund to be created out of an assessment against the owners of the land benefited by the construction of the ditches.   It was further said that, as there was no privity between the holder of the warrants and the taxpayers liable to pay for the improvement, he could not maintain an action against them, but was entitled to judgment against the county, and to the enforcement of the payment by the levy of a tax in obedience to the requirements of the statute.   We quote the following from that case:   " We do not determine that plaintiff can by mandamus compel the county treasurer to pay the warrants from the general funds of the county.   The law contemplates that the owners of the property benefited by the ditch must pay the costs of its construction, and, if the plaintiff obtains judgment upon the warrants, the method of raising means for its payment is plainly pointed out by statute." The case now before us is very different from that.   There is a difference as to parties, the holder of the warrants being the party plaintiff in that case.   Again, the warrants in that case were payable out of a particular fund, and the statute provided for the creation of that fund.   Moreover there was no holding that in the event of failure to raise that fund the county would not be liable upon the warrants.   Indeed we have held that when a city or other municipality fails to do its duty in the making of special assessments to meet an indebtedness, the city itself becomes liable  personally, and judgment may be obtained against it.   *Ft. Dodge Electric L. & P. Co. v. City of Ft. Dodge,* 115 Iowa, 568, and cases cited.

The liability in this case is upon bonds, and there is

no statutory or other authority for a special levy to meet the obligations imposed. In all the cases cited by appellee, while there may have been a liability upon the part of the municipality, that liability was expressly payable out of a particular fund which the corporation was expressly authorized to create. But that is not the case here. The constitutional questions suggested by appellee do not seem to be in the case. In so far as they are collaterally involved, we have disposed of them in what has heretofore been said. The bonds are valid in the hands of innocent holders, and they are valid as to the entire county. They are not payable, nor may they be made payable, out of a particular fund, but must be paid out of the bond fund authorized by section 406 of the Code. Appellee's suggestion that the case is the same as if two separate counties were interested is not true, and, if adopted, would lead to a fallacious conclusion. No one could act for two separate counties, and there could not be an estoppel against them, no matter who should assume to act on their behalf. If there were any one who could so act, we would have a parallel case, and, if that were true, we doubt not that the taxable property of both counties would be liable. But we need not deal with supposed cases, for the facts here are agreed to, and the sole question is one of law. As supporting our views upon the question of taxing districts and of the public purpose for which the bonds were issued, see *Kelly v. Pittsburgh,* 104 U. S. 78 (26 L. Ed. 659); *State v. Lakeside Land Co.,* 71 Minn. 283 (73 N. W. 970); *Butler v. City of Muscatine,* 11 Iowa, 433; *Fulton v. City,* 17 Iowa, 404; *Maltby v. Tautges,* 50 Minn. 248 (52 N. W. 858). The segregation of the city from the county was not for the purpose of paying bonded indebtedness, but for the purpose of levying and collecting taxes for bridges within their respective territorial jurisdictions. As to bonds the taxing district is coextensive with the county.

The whole matter resolves itself down to these ultimate questions: (1) May a county issue long-time negotiable

bonds to refund an indebtedness of a part of the county?
(2) If it may do so, can it levy a tax upon a part of the
property of the county and satisfy its obligations? and (3)
Is there any authority to levy a bond tax upon a part of the
property of the county? After the refunding of the indebt-
edness into bonds there is no statutory method for paying
these bonds save by a bond tax upon all the property of the
county. The original warrants are merged into the bonds,
and neither the bonds nor the law which is in effect written
into the bonds authorize the levy of a tax upon part of the
property of the county for the satisfaction of these bonds.
The taxes are no longer bridge taxes, but taxes to satisfy
bonds issued by the county. And these bonds must be paid
out of the bond fund authorized by section 406 of the Code,
and in no other way. Does any one suppose that the execu-
tive council could authorize a bond tax upon a part of the
property of a county under section 408 of the Code? If so,
I do not know where the authority for it is to be found, and
yet that is the result of the majority opinion. It must be
remembered that the holders of the indebtedness are bond-
holders. They never held any of the warrants which were
refunded. They paid their money for these bonds upon the
strength of sections 406 and 408 of the Code, and are en-
titled to the proceeds of the levy already made, and such as
shall be made in the future. The whole trouble in the case
may be solved by remembering that the statute segregating
the bridges in a city from those in the country in the same
county was passed long after these bonds issued and bond
tax statutes were enacted. Originally there was and could
be no question about the correctness of my view. The in-
debtedness was a county one, no matter where the bridges
were located, and bonds issued to take up warrants were to
be paid out of a bond fund resulting from a tax upon the
entire property within the county. Thereafter bridges
within the cities of the first class were segregated from
bridges without such cities, and levies were provided for

each. But no change was made in the statutes with reference to bond issues or bond levies until the Thirtieth General Assembly passed the act before mentioned. The board of supervisors was authorized to levy taxes for bridge funds both without and within cities of the first class, but could levy only one kind of bond tax, and that was to be upon all the property within the county. Section 406, the only one authorizing a levy for bond purposes, expressly says that it shall be upon the taxable property of the county. This means, of course, wherever located within the county. In the event the board does not do this, the executive council may and is required to do so. See section 408. It is well settled that no tax can be levied without authority and that the taxing power must be exercised according to the law as it is written, and not upon some supposed equitable bases. *Chicago R. R. v. Phillips,* 111 Iowa, 377. The taxes in question are bond taxes which are authorized to be levied, and they must be upon all the taxable property within the county. Such is the law as written, and such is equity as between all the parties. If there be any duties or rights as between these litigants, they must be worked out in some other manner than through such a proceeding as this.

I believe the decree should be *reversed.*