# IN THE COURT OF APPEALS OF IOWA

No. 17-1692
Filed November 7, 2018

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**TIMOTHY LETURE CHEW,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Des Moines County, Mark E. Kruse (trial) and Mary Ann Brown (appeal bond review), Judges.

A defendant appeals his convictions for assault with intent to inflict serious injury and going armed with intent. **CONVICTIONS AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**TABOR, Judge.**

A jury convicted Timothy Chew of assault with intent to inflict serious injury and going armed with intent. On appeal, Chew argues the jury did not receive proper instructions. He also contends his $750,000 cash-only appeal bond is unreasonable. Because Chew cannot show prejudice resulting from the jury instructions, we affirm. As for his appeal bond, we conclude the district court abused its discretion in imposing an amount so high Chew was functionally denied bail in violation of legislative directives.

**I.      Facts and Prior Proceedings**

A shoot-out in broad daylight drew Burlington police to a residential neighborhood on South Central Street the weekday morning of May, 10, 2017. When Officer Kenneth Zahner arrived just after 9 a.m., he spotted Chew walking down the street carrying an assault-style rifle. Officer Zahner drew his service revolver and ordered Chew to the ground. As the officer was handcuffing Chew, A.J. Smith charged from his friend's front porch and kicked Chew in the face.

After securing the scene, officers found shell casings indicating Chew fired thirty-six rounds from his rifle and Smith fired eight rounds from a small-caliber pistol. Several witnesses testified they heard the higher-pitch sound of the pistol shooting first, followed by the deeper sound of the rifle firing in response.

Allen Swayzer lived on South Central Street and often hosted Smith for coffee and marijuana cigarettes in the morning. On May 9, the morning before the shootout, Smith and Swayzer were following their usual routine on the front porch when Chew drove by yelling: "Come get it." Smith recalled Chew shouting: "Come out and play." Chew claimed Smith "flashed" a gun at him.

The next morning, Swayzer saw Chew coming toward his house again. This time, Swayzer started "hearing gunshots." A passerby saw a man matching Chew's description crouched between parked cars, aiming an assault-style rifle at another man across the street. Chew admitted being in Swayzer's neighborhood that morning. Chew wore a bullet-proof vest and carried an assault-style rifle equipped with two thirty-round clips, bound together with black electrical tape to facilitate faster reloads.[1] Chew claimed Smith shot at him first, and when Chew returned fire, Smith ran away.

In Smith's version of events, Chew fired first and Smith shot back with a pistol he commandeered from a friend at the scene. Smith did not remember how many shots he fired: "I can't tell you exactly because [Chew] was firing so many times, it was just like panic firing, trying to get him up off me." When Smith's gun jammed, he fled. As Smith ran away, one of Chew's bullets grazed his head and he fell. Smith returned to his feet and darted between the houses. He tossed the pistol to avoid being arrested as a felon in possession of a firearm. Surveillance video from neighborhood houses showed Smith running and Chew apparently pursuing him.

The State charged Chew with going armed with intent and attempted murder. After a four-day trial, the jury returned guilty verdicts for going armed and the lesser-included offense of assault with intent to commit serious injury. The district court imposed indeterminate sentences of two and five years for the respective counts, running the terms consecutively. Chew seeks a new trial.

---

[1] Chew had a license to carry the firearm, which he produced for police at the scene.

**II.     Scope and Standards of Review**

Each issue raised in this appeal calls for a different standard of review. First, we review the district court's refusal to give a requested jury instruction for the correction of legal error. *Shams v. Hassan*, 905 N.W.2d 158, 162 (Iowa 2017). Second, we review a claim of ineffective assistance of counsel de novo. *State v. Harrison*, 914 N.W.2d 178, 188 (Iowa 2018). Third, we review the amount of an appeal bond for an abuse of discretion. *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002).

**III.     Analysis**

**A.     Jury Instruction on Resisting a Forcible Felony**

A district court cannot refuse to instruct the jury on a defense theory when the evidence supports the theory and the instruction is a correct statement of the law. *State v. Ross*, 573 N.W.2d 906, 913 (Iowa 1998). If a defendant presents substantial evidence to support an affirmative defense, the district court must instruct the jury on that defense. *State v. Broughton*, 425 N.W.2d 48, 52 (Iowa 1988). Erroneously denying a jury instruction requires reversal unless the complaining party suffers no prejudice. *State v. Hoyman*, 863 N.W.2d 1, 7 (Iowa 2015). When the error does not implicate a constitutional right, we test for prejudice by assessing whether the rights of the complaining party have been "injuriously affected" or the party suffered a miscarriage of justice. *State v. Plain*, 898 N.W.2d 801, 817 (Iowa 2017) (quoting *State v. Marin*, 788 N.W.2d 833, 836 (Iowa 2010)).

Before trial, Chew filed a notice of intent to rely on self-defense. *See* Iowa Code § 704.3 (2017). The district court gave the jury a series of eight uniform instructions to explain the law controlling Chew's justification defense.[2]

In addition to those self-defense instructions, Chew asked the district court to instruct on the justification of resisting a forcible felony. On the date of the shooting, that defense provided: "A person who knows that a forcible felony is being perpetrated is justified in using, against the perpetrator, reasonable force to prevent the completion of that felony." Iowa Code § 704.7.[3] To communicate that defense to the jury, Chew urged the court to submit the following uniform instruction:

> A person is justified in using reasonable force against someone committing a forcible felony to prevent completion of the felony if [he] [she] knows a (name of forcible felony) is being committed.
>
> If the State has proved any one of the following elements, the defendant was not justified:
> 1. The defendant knew (name of forcible felony) was not being committed by (name of victim).
> 2. The defendant did not believe the force was necessary to prevent the (name of forcible felony).
> 3. The defendant did not have reasonable grounds for the belief.
> 4. The force used by the defendant was unreasonable.

Iowa Crim. Jury Instruction 400.6.

---

[2] The eight uniform instructions included Iowa Criminal Jury Instructions 400.1, 400.2, 400.7, 400.8, 400.10, 400.12, 400.13, and 400.16.

[3] Effective July 1, 2017, the legislature amended the defense as follows: "A person who ~~knows~~ reasonably believes that a forcible felony is being or will imminently be perpetrated is justified in using~~, against the perpetrator,~~ reasonable force, including deadly force, against the perpetrator or perpetrators to prevent ~~the completion of~~ or terminate the perpetration of that felony." 2017 Iowa Acts ch. 69, § 42 (now codified at Iowa Code § 704.7).

Unlike the self-defense instruction, the uniform instruction on resisting a forcible felony omits the requirement the defendant have no other available course of action. *State v. Newsom*, No. 13-2078, 2015 WL 1046132, at *4 (Iowa Ct. App. Mar. 11, 2015) (adding proviso that jury instructions "are not themselves laws").

The State objected to the resisting-a-forcible-felony instruction, arguing it did not apply because Chew was "claiming self-defense." To bolster this position, the prosecutor asserted: "[R]esisting a forcible felony doesn't have any language that the forcible felony is being committed against yourself. The way I read that is this would have to be another category."

The district court declined to give the requested instruction, first opining it was "duplicative" of the self-defense instruction but also suggesting "it's made for a different factual situation not presented here." The district court also read from our decision in *Newsom*, "Additionally, because the asserted felony was assault, the resisting forcible felony justification would have been in substance indistinguishable from the defense-of-self and -others instructions." *Id.* at *5.

Chew renews his jury-instruction argument on appeal. He contends uniform instruction 400.6 was a correct statement of the law and applied to his case.[4] Without it, Chew claims he was prejudiced because the self-defense instruction

---

[4] Chew does not specify whether he believes this justification defense countered only the attempted-murder charge (and its lesser-included assault offenses) or also excused the going-armed count. Of note, only the assault offenses included an element of force (i.e., Chew shooting at Smith) that could be justified by Smith's alleged perpetration of a forcible felony. The marshalling instruction for going armed did include an element Chew was "not acting with justification." But the only act at issue was "moving from one place to another" while armed with a firearm. *See* Iowa Code § 708.8. The reference to use of reasonable force in instruction 400.6 does not logically justify the movement element in section 708.8. Therefore, we consider this issue as challenging only Chew's conviction for assault with intent to inflict serious injury.

given to the jury required him to prove he had no other available course of action. By contrast, the defense of resisting a forcible felony does not carry a duty to retreat or seek an alternative course of action, according to Chew. Chew distinguishes *Newsom* because Newsom was on his own property, so the district court instructed the jury he was not required to retreat to avoid a confrontation. *See id.* Where Newsom's self-defense was void of a duty to retreat, uniform instruction 400.6 would have been superfluous. *See id.*

But Chew was not on his own property. Consequently, the instructions enabled the State to argue Chew's justification defense failed because he ignored an alternative course of action. In summation, the prosecutor told the jury: "After A.J. Smith [ran] away, [Chew] could have stayed on this side of the street. He could have walked away. . . . [H]e could have ducked for cover here instead of pressing forward to where the shooter was." Chew contends had the court instructed the jury no such duty existed under the defense of resisting a forcible felony, its verdict "could have been substantially different."

In response to Chew's arguments on appeal, the State does a one-eighty from its position at trial. Rather than echoing the prosecutor's argument that self-defense and resisting a forcible felony apply to separate situations, the State now derides Chew for suggesting "the exceptions to Iowa Code sections 704.3 and 704.7 are distinct." The State continues:

> Assuming section 704.7 creates an affirmative defense and that Chew established substantial evidence to support the defense, he was not entitled to uniform instruction 400.6 in its present form because the uniform instruction is incomplete. A complete version of the instruction would permit the State to disprove the justification by establishing an alternative course of action exists.

But because the State did not present that argument to the district court, it is not viable here. *See DeVoss v. State*, 648 N.W.2d 56, 63 (Iowa 2002) (declining to consider issue for the first time on appeal, even if it is the only ground available to uphold a district court ruling).

Alternatively, the State contends even an unmodified version of uniform instruction 400.6 would have been unavailing because Chew used unreasonable force. The State highlights the fact Chew went to Swayzer's house "while armed and armored." Chew wore a bulletproof vest, fashioned a "poor-man's tactical reload" for his assault-style rifle, and fired at Smith even after Smith stopped perpetrating any forcible felony.

After sizing up the arguments from both sides, we conclude even if the district court should have granted Chew's request for an instruction on resisting a forcible felony, not doing so was harmless error.

To be sure, we appreciate the district court's hesitation to confuse the jury with duplicative instructions. The defense of resisting a forcible felony is an enigma. *Newsom*, 2015 WL 1046132, at *4 (acknowledging "very little case law [exists] to aid in our interpretation of section 704.7"). Only the unpublished decisions in *Newsom* and *O'Shea v. State*, No. 05-0331, 2006 WL 623593, at *3 (Iowa Ct. App. Mar. 15, 2006) explore the availability of the defense. And neither decision matches the facts at hand.

Here several witnesses testified they heard small-caliber gunfire *before* they heard the louder report coming from Chew's assault-style rifle. That chronology bolstered the defense theory Chew knew Smith was perpetrating a felonious assault (listed among the forcible felonies in section 702.11(1)) by firing his pistol

at Chew. But assuming without deciding the district court should have given uniform instruction 400.6, the absence of the instruction did not negatively affect Chew's rights or cause him to suffer a miscarriage of justice. *See Plain*, 898 N.W.2d at 817. "[M]arginal or technical omissions" do not warrant reversal." *Id.* (citation omitted).

Here, the omission of uniform instruction 400.6 made no difference in the jury's understanding of the key issue before it—whether Chew's acknowledged show of force was reasonable under the circumstances. *See State v. Coleman*, 907 N.W.2d 124, 138 (Iowa 2018). The State's evidence established Chew continued to use potentially deadly force even after any valid self-defense (or resistance-to-a-forcible-felony) defense subsided. The district court supplied the jury adequate instructions on justification and reasonable force. Given the State's strong evidence of Chew's unrelenting pursuit of Smith—shooting at him as he ran away and even after Smith stopped firing his pistol—no prejudice resulted from the instructional error.[5] Reversal is not required.

## B.     Jury Instruction on Going Armed With Intent

In his next complaint about the jury instructions, Chew alleges his trial counsel missed the mark when advocating for an expanded marshaling instruction on the elements of going armed with intent. Chew insists counsel was ineffective

---

[5] The jury's decision to acquit Chew on the attempted murder count and convict him of the lesser-included offense of assault with intent to cause serious injury buttresses our finding of harmless error. Following their instructions, the jurors did not find substantial evidence Chew expected to set in motion a force of events which would cause Smith's death and did not believe Chew had the specific intent to cause Smith's death. But the jury did believe Chew intended to cause serious injury and did not find Chew was acting with justification.

in failing to recognize the 2017 amendment to Iowa Code section 708.8 clarified existing law rather than changed the elements of the offense.

To prevail on appeal, Chew must show counsel breached an essential duty and prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). On the first prong, Chew must show his attorney's performance fell "below the standard demanded of a reasonably competent attorney." *See State v. Virgil*, 895 N.W.2d 873, 879 (Iowa 2017) (quoting *Millam v. State*, 745 N.W.2d 719, 721 (Iowa 2008)). On the second prong, Chew was prejudiced if a reasonable probability existed, but for counsel's substandard performance, the result of the trial would have been different. *See id.* at 882. While we often preserve such claims for further factual development, this record enables us to decide the question. *See id.* at 879.

We start by examining counsel's performance. Counsel asked the district court to instruct the jury on the July 1, 2017 amendment to the going-armed statute. On the day of the shootout, the statute provided: "A person who goes armed with any dangerous weapon with the intent to use without justification such weapon against the person of another commits a class 'D' felony." Iowa Code § 708.8. In the omnibus weapons legislation discussed above, the General Assembly added the following sentence to section 708.8: "The intent required for a violation of this section shall not be inferred from the mere carrying or concealment of any dangerous weapon itself, including the carrying of a loaded firearm, whether in a vehicle or on or about a person's body." 2017 Acts ch. 69, § 4 (now codified at Iowa Code § 708.8).

On this point, defense counsel argued Chew should receive the retroactive benefit of any change in the criminal statute. The State disagreed, reasoning while ameliorative changes apply in sentencing, altering the elements the State was required to prove at trial would result in unfairness.

The district court denied the defense's request to add the amended language to the marshaling instruction for going armed with intent. The court drew a distinction between substantive and procedural laws. Finding the change to section 708.8 substantive, the court decided the legislature intended it to be prospective only. *See* Iowa Code § 4.5 (presuming prospective application of enactments).

Now imagine the district court had heard a more compelling argument for including the new language in the marshaling instruction. Chew contends if counsel had argued the no-inference addition to the going-armed offense *clarified* rather than *changed* the prior statute, the court would have ruled in his favor. *See Barnett v. Durant Cmty. Sch. Dist.*, 249 N.W.2d 626, 629 (Iowa 1977) ("Whenever it appears legislation may have been passed simply for the purpose of removing doubt from previous acts, the courts should give effect to that purpose." (citing *Slutts v. Dana*, 115 N.W. 1115, 1118 (Iowa 1908))).

For its part, the State now agrees the amendment did not create a new element for going armed. Nor did it mark a substantive change to the statute. Rather, the State acknowledges "the amendment makes clear that violation of the existing statute could not be established *solely* by proof of the defendant's possession of the dangerous weapon; the jury must base its verdict on additional evidence of an unlawful intent to use the weapon without justification." The State

concedes trial counsel was remiss in not making that point when asking for the expanded going-armed instruction.

That concession made, the State focuses on the lack of prejudice. The State maintains: "Under the evidence adduced at trial, an additional instruction touching upon the legislative amendment to section 708.8 would have no impact on the jury's verdict."

We likewise believe Chew's challenge falls short on prejudice grounds. *See King v. State*, 797 N.W.2d 565, 574 (Iowa 2011) (bypassing issue of counsel's performance to decide whether trial attorney's failure to take certain action undermined confidence in verdict). The State presented ample evidence from which the jury could infer Chew's intent to use his assault-style rifle against Smith. This evidence went far beyond "mere carrying" of a dangerous weapon. Chew revealed his intent in taunting Smith the day before the shooting. And the morning of the shootout, Chew received a ride to Swayzer's neighborhood before proceeding on foot to Smith's location. He came clad in body armor and with two clips taped together to increase his speed in reloading.

What's more, Chew acted on his intent. He admitted shooting at Smith. In fact, Chew fired more than three-dozen rounds. Chew continued to move from place to place—firing his weapon—even as Smith fled. One of Chew's bullets hit Smith in the head. Given the strength of the evidence showing Chew's intent to use the weapon against Smith, the omission of the clarifying instruction did not affect the jury's verdict.

## C.    Appeal Bond Amount

"All defendants are bailable both before and after conviction, by sufficient surety."  Iowa Code § 811.1; *accord* Iowa Code § 811.5 ("After conviction, upon appeal to the appellate court, the defendant must be admitted to bail . . . .").[6] Chew—who listed no income or financial resources on court documents—argues the district court abused its discretion in setting his cash-only appeal bond at three-quarters of a million dollars.

A district associate judge set this high bond at Chew's initial appearance on May 11, 2017.  Once appointed, defense counsel sought a reduction.  In its subsequent evaluation, the Eighth Judicial District Department of Correctional Services (DCS) recommended Chew "remain incarcerated and be placed on a bond that the Court deems to be appropriate."

At a May 30 bond hearing, Chew testified he was unemployed and unable to work because he suffered from seizures.  He told the court he was a life-long resident of Burlington, lived with his grandmother, and had numerous other relatives in the community.  He testified his criminal record included a deferred judgment for possession of marijuana and a fine for a simple misdemeanor assault conviction.  He denied ever missing a court hearing.  Chew assured the court he would abide by pretrial supervision conditions and asked for a surety bond, noting family members owned houses that could be posted as security.  Defense counsel asserted a bond of $50,000 cash or surety would ensure Chew's appearance.  The

---

[6] Section 811.1 contains exceptions, but none are applicable here.

State argued Chew posed "a danger to the community" and asked the court to maintain the $750,000 cash-only bond.

After the hearing, the district court recognized Chew was "bailable" under section 811.1. In concluding the State established $750,000, cash only, was a reasonable amount of bail, the court pointed to the following eight factors:

> 1. the nature and circumstances of the offense—serious assaultive behavior resulting in charges of Attempted Murder and Going Armed With Intent;
> 2. the Defendant's family ties—his grandmother and other unnamed relatives are his only relatives in the area;
> 3. the Defendant's employment history – he is unemployed;
> 4. the Defendant's financial resources – he has no financial resources;
> 5. the Defendant's character and mental condition—he suffers from seizures;
> 6. the length of the Defendant's residence in the community—lifelong with his grandmother;
> 7. the Defendant's record of convictions—the Defendant has a previous conviction for assaultive behavior; and,
> 8. the Defendant's record of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings—Defendant has one failure to appear. (Although the Defendant denies this, he goes on to testify he has no recollection of the proceeding.)[.]

These factors track the conditions noted in section 811.2(2).[7]

Unable to afford the cash-only bail, Chew remained incarcerated through his mid-August 2017 trial. After Chew's convictions, his counsel again sought a

---

[7] Section 811.2(2) provides:
> In determining which conditions of release will reasonably assure the defendant's appearance and the safety of another person or persons, the magistrate shall, on the basis of available information, take into account the nature and circumstances of the offense charged, the defendant's family ties, employment, financial resources, character and mental condition, the length of the defendant's residence in the community, the defendant's record of convictions, including the defendant's failure to pay any fine, surcharge, or court costs, and the defendant's record of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings.

bond review. Defense counsel emphasized the jury's acquittal on the attempted murder charge meant Chew faced no mandatory prison time. Still the court declined to reduce Chew's bond. The court reasoned:

> The unrebutted record presented to the jury and the court during the course of the trial was that the defendant, shortly after 9:00 a.m. on May 10, 2017, was armed with a high-powered rifle and he engaged Arthur Johnson Smith in gunfire, discharging his weapon at least 38 times. This all occurred in a residential area of Burlington, Iowa. That set of circumstances is not now a mere allegation, but evidence presented at trial.

Although the jury found Chew guilty of a lesser-included offense of attempted murder, the court believed Chew's danger to society was "just as great now as it was at the time of his original appearance." The court noted testimony from Chew's mother at the bond-review hearing revealing Chew's brother had been murdered after the jury returned its verdict in this case and expressing concern the two crimes could be related. The court observed: "It was clear during the course of the bond review that emotions in the Chew family are high. Such volatile emotions could lead a person to not exercise good judgment and react in irrational ways."

After sentencing, the district court left the $750,000 cash-only bond in place for appeal, citing "the serious nature of the offenses, the use of a firearm and other factors in this case."

Now on appeal, Chew maintains the district court mistakenly relied on the earlier bail determinations in setting the cash-only appeal bond. He contends such reliance overlooked the jury's acquittal on the attempted murder charge. He also complains the court ignored his strong ties to the community and exaggerated the extent of his criminal history.

Before addressing the merits on appeal, the State flags the issue as moot, urging us to avoid the appeal-bond question because our opinion will have no impact on the underlying controversy. *See State v. Briggs*, 666 N.W.2d 573, 576 (Iowa 2003) ("As a rule, we do not decide appeals in which 'the issue becomes nonexistent or academic and, consequently, no longer involves a justiciable controversy.'" (quoting *State v. Hernandez-Lopez,* 639 N.W.2d 226, 234 (Iowa 2002))).

At the same time, the State acknowledges Iowa appellate courts have addressed similar issues despite their mootness. *See, e.g.*, *Formaro*, 638 N.W.2d at 726 (characterizing $50,000 appeal bond following conviction for second-degree burglary as "high, particularly in light of the condition that it would be paid in cash," but declining to conclude the bond was "excessive to the point of constituting an abuse of discretion"); *Kellogg*, 534 N.W.2d at 433 (upholding $20,000 appeal bond for two serious misdemeanor domestic-abuse assault convictions); *State v. Olofson*, No. 17-0737, 2018 WL 1098906, at *2 (Iowa Ct. App. Feb. 21, 2018) (holding imposition of $2000 appeal bond following guilty plea to possession of a controlled substance was not an abuse of discretion); *State v. Maxwell*, No. 15-1392, 2016 WL 6652361, at *12 (Iowa Ct. App. Nov. 9, 2016) (concluding district court did not abuse its discretion in imposing a firearms ban as part of the appeal bond); *State v. Woods*, No. 16-0698, 2016 WL 6269881, at *2 (Iowa Ct. App. Oct. 26, 2016) (finding no abuse of discretion in $5000 appeal bond after guilty plea to assault while displaying a dangerous weapon); *State v. Steenhoek*, No. 99-0632, 2000 WL 564173, at *2 (Iowa Ct. App. May 10, 2000) (rejecting claim

$25,000 cash-only appeal bond following convictions for stalking and extortion was excessive and effectively denied bail).

Like the appellate courts did in those cases, we opt to reach the merits of the appeal-bond issue here. *See Briggs*, 666 N.W.2d at 576 (entertaining controversy over cash-only bond "despite it being moot"). As Chew argues in his reply brief, the imposition of cash-only bail on appeal is an issue of public importance that is likely to recur. *See id.* at 576–77.

We begin our analysis by looking to the main purposes of imposing bail conditions following appeal of a bailable offense: (1) assuring the future appearance of the defendant upon completion of the appeal and (2) providing for the safety of others during the course of the appeal. *See Formaro*, 638 N.W.2d at 726.

The second of those purposes, concern for the safety of others, propelled the district court to continue setting Chew's bond at $750,000, cash only. Without dispute, the district court was justified in giving considerable weight to the dangerous nature of Chew's current crimes, including his indiscriminate use of the firearm in a residential neighborhood. *See id.* But the raw amount of the bond— without access to a commercial bail-bond company or a traditional surety arrangement[8]—was exorbitant even "in light of the perceived evil." *See Kellogg*, 534 N.W.2d at 434.

---

[8] In *Briggs*, the majority of our supreme court decided cash-only bond did not violate "the sufficient sureties clause of the Iowa Constitution so long as the accused is permitted access to a surety in some form." 666 N.W.2d at 583.

Even Chew acknowledges the reasonableness of imposing "a significant appeal bond" given the seriousness of the offenses for which he was convicted. But he contends "a cash-only bond amounting to $20,000 for every bullet fired is excessive and an abuse of discretion."

While this rhetorical device is not a viable measure of what is excessive bail, our case law offers little in the way of objective guidelines for trial judges setting bond amounts. To that end, Iowa appellate courts have repeatedly rejected reference to the Iowa Judicial Council's uniform bond schedule as a calibration for setting appeal bond. *See, e.g., Kellogg*, 534 N.W.2d at 435 (noting supervisory order recommends amounts to be used in "setting conditions of defendants' *pretrial* release" and finding "it has no application to bond set for a convicted defendant while appeal is pending"); *Woods,* 2016 WL 6269881, at *2 (deflecting defendant's reliance on bond schedule); *State v. Huss*, No. 09-0574, 2010 WL 200043, at *3–4 (Iowa Ct. App. Jan. 22, 2010) (rejecting argument $50,000 cash bond following conviction for operating while intoxication violated Iowa Constitution "simply because it is twenty-five times the amount that would have been initially set if the court were not in session").

Accepting the logic of *Kellogg*, *Huss*, and *Woods*, we nevertheless turn to the uniform bond schedule as a mere point of reference for what dollar amount would attach to certain offenses in the absence of a judicial officer exercising his or her discretion. *Cf. In re Marriage of Mauer*, 874 N.W.2d 103, 108 (Iowa 2016) (referring to spousal support guidelines as "useful reality check in some cases" but not binding on Iowa courts). Chew faces convictions for a class "D" felony and an aggravated misdemeanor. Had Chew been arrested for those two offenses and

the courts were not in session, he could have been released pending an initial appearance with a bond of $5000 for the class "D" felony and $2000 for the aggravated misdemeanor.  *See* Iowa Supreme Court Judicial Council, In re Unif. Bond Schedule, at 1 (June 23, 2017) (effective July 1, 2017).  The $750,000 cash only bond in place throughout these proceedings was more than one-hundred times the amounts listed in the supervisory order.

Keeping that "reality check" in mind, we consider whether the district court abused its discretion in leaving the cash-only bond of $750,000 in place for the appeal.  The district court cited Chew's lack of employment and non-existent financial resources when setting the original bond.  Still, the court set an unattainable bail given the defendant's indigent status.  *See Brangan v. Commonwealth*, 80 N.E.3d 949, 959 (Mass. 2017) ("A bail that is set without any regard to whether a defendant is a pauper or a plutocrat runs the risk of being excessive and unfair.").  We realize an appeal bond does not have to be affordable. *See Kellogg*, 534 N.W.2d at 435 (noting the public interest in promoting victim safety is a concern independent of the defendant's financial status).  But when a judge sets bail in an amount so far beyond a defendant's ability to pay making it all-but impossible the defendant could post that amount of cash, the order amounts to "the functional equivalent" of denying bail.  *See Brangan*, 80 N.E.3d at 963 (discussing due process and pretrial bail);[9] *see also* Colin Starger & Michael

---

[9] The Supreme Judicial Court of Massachusetts held using "unattainable bail to detain a defendant because he is dangerous" violated due process.  *Id.* at 963–66; *see also In re Humphrey*, 228 Cal. Rptr. 3d 513, 528–29 (Ct. App. 2018) ("Money bail . . . has no logical connection to protection of the public, as bail is not forfeited upon commission of additional crimes.  Money bail will protect the public only as an incidental effect of the defendant being detained due to his or her inability to pay, and this effect will not consistently serve a protective purpose, as a wealthy defendant will be released despite his or her

Bullock, *Legitimacy, Authority, & the Right to Affordable Bail*, 28 Wm. & Mary Bill Rts. J. 589, 610–18 (2018) ("[*United States v. Salerno*, 481 U.S. 739, 754 (1987)] established that it is constitutionally acceptable to detain a person pretrial because she is dangerous—but it does not authorize setting a deliberately unaffordable bail to achieve the same detention result.").

Because our legislature determined individuals in Chew's situation are bailable, the de facto denial of bail thwarts that legislative intent. The legislature intended district courts to weigh all factors in section 811.2(2). In this case, the dangerous nature of Chew's offenses loomed large, and the court naturally gave that factor greater weight. But the remaining factors tilted against the sky-high bail. Chew was a life-long resident of Burlington and had many family members in the community. He was unable to work because he suffered seizures from a head injury and owed a large amount of money for his medical bills. His record of prior convictions consisted of simple misdemeanor assault in 2008 and possession of a controlled substance, for which he received a deferred judgment in 2011. Chew denied any history of failing to appear at court proceedings. At sentencing, his attorney reported Chew had no substance-abuse or mental-health problems. Defense counsel also argued the district court could protect Smith by entering a no-contact order.

---

dangerousness while an indigent defendant who poses minimal risk of harm to others will be jailed."); Lauryn P. Goldin, *Disentangling Flight Risk from Dangerousness*, 2016 BYU L. Rev. 837, 863–65 (2016) ("[I]f a court views a defendant as being a high risk for committing a new crime on release, it does not seem appropriate to simply set a high price for release. Dangerous defendants do not become less dangerous by paying bail." (footnote omitted)).

The bond review court provided a truncated analysis of the factors it considered in declining to reduce the bond on appeal. The court did not reference Chew's financial status or a risk he would not appear after the appeal. Neither did the court acknowledge the jury acquitted Chew of the most serious charge— attempted murder.

While the court set a bail amount in form, it denied Chew bail in function by continuing the unattainable bond through the appeal. On this record, the district court abused its discretion in setting a cash-only appeal bond at $750,000. But because our determination will not have any practical effect once the appeal ends, we decline to direct the district court to take any further action concerning bail.[10]

**CONVICTIONS AFFIRMED.**

---

[10] In the conclusion of both his opening and reply briefs, Chew asks this court to "direct the district court to set a new, reduced appeal bond." The parties suggest no mechanism for doing so. Moreover, this appeal did not arise under Iowa Code section 811.2(7)(b) where the post-trial release issue could be decided "summarily" with or without briefing.