CITY OF KEOKUK and JAMES CAMERON, SR. v. H. J.
    KENNEDY as Treasurer of LEE COUNTY, IOWA, and
    WILLIAM REIMBOLD, his Deputy, and LEE COUNTY,
    Appellants:

Municipal corporations: COMMISSION FORM OF GOVERNMENT: POWERS.
1   Cities, including those organized by special charter, adopting the
    commission form of government retain the powers previously
    exercised.

Same: SPECIAL CHARTER CITIES: BRIDGE TAXES.   A county has no
2   authority to levy a bridge tax on property within special char-
    ter cities, but such cities have exclusive power to levy such
    taxes to be expended for bridge purposes within their limits;
    and this right is not affected by adoption of the commission form
    of government.

*Appeal from Lee District Court.*—HON. HENRY BANK, JR.,
                    Judge.

FRIDAY, OCTOBER 18, 1912.

THE facts are stated in the opinion.—*Affirmed.*

*Joseph R. Frailey* and *George B. Stewart*, for appel-
lants.

*Hollingsworth & Blood*, for appellees.

SHERWIN, J.—The city of Keokuk was a special
charter city until it organized under the commission plan
in 1909. For more than twenty years, while it was operat-
ing under its special charter, and until 1910, it had had
control of the bridges within its boundaries, and had levied
for the purpose of their construction and maintenance such

taxes as were necessary therefor. In September, 1910, the board of supervisors of Lee county levied a tax for bridge purposes on the property within the limits of the city, and this suit in equity was thereupon brought to enjoin the collection thereof, and asking that the same be canceled. The case was tried on an agreed statement of facts, and a decree was entered for the plaintiffs.

Section 1056-a25 of the Supplement to the Code, as amended by section 7 of chapter 64 of the Acts of the Thirty-Third General Assembly, provides, and we have so

1. MUNICIPAL CORPORATIONS: commission form of government: powers.
held, that cities acting under the commission plan of government shall have, among others, the same powers that they theretofore had. *Sims v. City of Des Moines,* 146 Iowa 410; *Eckerson v. Des Moines,* 137 Iowa, 452.

So that the ultimate question for our present determination is whether property within the limits of Keokuk, while it was a special charter city, was subject to a bridge tax

2. SAME: special charter cities: bridge taxes.
levied by the board of supervisors of the county for general county purposes. Code, section 758, relating to cities of the first class, is as follows: "Cities of the first class shall have full control of the bridge fund levied and collected as provided by law, and shall have the right to use the same for the construction of bridges, culverts, and approaches thereto, repairing the same, and paying bridge bonds and interest thereon issued by such city, and shall be liable for defective construction thereof, and failure to maintain the same in safe condition as counties now are with reference to county bridges; and no county shall be liable for any such bridge or injuries caused thereby." This section in express terms gives to cities of the first class full control of the bridge fund levied and collected as provided by law on the property within their limits, and the further right to use such money for the construction of bridges and culverts. The city is therein made liable for the defective construction

thereof and for a failure to maintain the same, and the county is expressly exempted from liability for injuries caused by a failure of the city to properly construct and maintain. The authority conferred on a city of the first class by this section is broad, and, if it stood alone, it would be ample authority for holding that the county had no right to levy a bridge tax on property within the limits of a city of the first class. Full control of the bridge fund levied on such property is given, and the right to construct and maintain bridges is given, and liability for failure to properly construct and maintain is therein imposed. In order to give cities still more complete control over the bridges within their limits, section 888 provides that cities of the first class may annually levy a tax not exceeding three mills on the dollar, to be known as the "city bridge fund." In this connection, it is worthy of note that section 888 fixed the limit of the levy at the exact amount that is fixed for a general county levy by paragraph 4 of section 1303 of the Code, and it is further well to call attention to the fact that it has been the policy of the lawmakers from the earliest history of the state to limit the levy for bridge purposes to not more than three mills on a dollar. Revision, section 710; Code 1873, section 796; Code, section 1303.

The rights and powers of cities of the first class in relation to the control of bridge funds and the right to make a levy for such fund were conferred upon cities acting under special charter by sections 958 and 1004 of the Code. Section 958 provides that section 758 shall be applicable to cities acting under special charter, and section 1004 makes the same provision as to section 888. Section 1303 expressly provides that the county shall not levy a bridge tax upon any property assessable within the limits of any city of the first class, and appellants contend that, because cities of the first class are alone named as within the prohibition, the property within the limits of all other

cities is subject to a general county levy. This express
limitation on the power of the board of supervisors first
appears in section 1303. Before the enactment of this sec-
tion, cities of the first class had been given power to levy
a tax for bridge purposes within their limits, and had been
given full control of all bridge funds levied by law on
property within their limits, and as to these matters, cities
acting under special charter had long before been given all
power that was possessed by cities of the first class, and we
are of the opinion that it was not the intent of section
1303 to authorize the county to levy a tax of three mills on
a dollar upon all property within the corporate limits of
cities acting under special charter, in addition to the three-
mill levy which such cities were already authorized to make.
The limit of such taxation had always theretofore been
three mills on a dollar upon all property within the county,
whether it was within or without the limits of cities of
the first class or cities acting under special charter, and
we do not believe that the Legislature in enacting section
1303 intended to authorize a levy of six mills on a dollar
upon property in special charter cities. To give the section
such a construction would be to repeal by implication sec-
tions 758, 888, 958, and 1004, and such repeals are not
favored. Reading all of the sections referred to together,
we are satisfied that section 1303 did not intend to author-
ize the county to levy a bridge tax on property within
special charter cities, and, if this conclusion is right, the
city of Keokuk still has the same rights relative to its
bridge matters as it had when acting under special charter.
Sections 758 and 888, in our judgment, gave to cities of
the first class the exclusive right to levy a tax for bridge
funds on property within their limits, and section 1303
added nothing to this power, because, in the absence of
the clause thereof exempting the property of cities of the
first class from a bridge levy by the county, the other parts
of the section would · necessarily have to be construed

in connection with the exclusive power given to such cities by sections 758 and 888. Our conclusion is that the judgment of the district court is right, and it is therefore—*Affirmed.*