IOWA CITY, Appellant, v. GROVER C. WATSON, County Treasurer, Appellee.

**MUNICIPAL CORPORATIONS:** Taxation—Bridge Levies—Construction of Statutes. The provision of Section 758, Code Supplemental Supp., 1915, providing that certain cities shall have control of bridge funds *"levied and collected,"* has no application to bridge levies made by the board of supervisors *before* said section became effective, even though such levies were, in part, collected *after* said section became effective.

*Appeal from Johnson District Court.*—R. P. HOWELL, Judge.

JANUARY 17, 1918.

ACTION in mandamus to require defendant to pay plaintiff certain taxes. A demurrer to plaintiff's petition was

sustained, and judgment rendered against plaintiff for costs. Plaintiff appeals.—*Affirmed.*

*A. E. Maine,* for appellant.

*Edwin B. Wilson,* for appellee.

PRESTON, C. J.—The action is to require defendant, as county treasurer, to pay plaintiff that portion of bridge fund taxes collected by him after July 4, 1915, when Sec. 758 of the Supplemental Supplement to the Code, 1915, took effect. The petition alleges, substantially, that a portion of the bridge fund taxes in the sum of $4,846.20, for the year 1914, levied in 1914, due and payable in 1915, on the taxable property within the corporate limits of the city, which, on July 4, 1915, had not been collected by defendant, were sub-sequently collected and retained by him in the county bridge fund. Plaintiff claims that it is entitled thereto under the above section, and that defendant refuses to pay the same to the plaintiff. The petition further alleges facts which, it is claimed, bring the plaintiff city within the provisions of the statute. The court sustained defendant's motion to strike portions of the petition and defendant's demurrer; and, plaintiff electing to stand upon the petition, judgment was entered against plaintiff for costs.

The statute referred to is as follows:

"Sec. 758. Cities of the first class and also cities of the second class having a population of five thousand or over, and which are traversed by a stream two hundred feet or more in width from shoreline to shoreline shall have full control of the bridge fund levied and collected as provided by law, and shall have the right to use the same for the construction of bridges, culverts, and approaches thereto, repairing the same, and paying bridge bonds and interest thereon issued by such city, and shall be liable for defective construction thereof, and failure to maintain the same in safe condition as counties now are with reference to county

bridges; and no county shall be liable for any such bridge or
injuries caused thereby."

The question presented is in regard to the construction
of this statute. Further admitted facts are that plaintiff
city is traversed by the Iowa River, 200 feet or more in
width, from shoreline to shoreline; that defendant has col-
lected, since July 4, 1915, and had in his possession and un-
der his control, as county treasurer, bridge funds collected
against the property within the corporate limits, in the sum
before set out; that demand was made upon defendant to
pay plaintiff the bridge fund so collected by him after July
4, 1915; that the funds so collected by him were from the
levy made against the property within the city limits by the
board of supervisors in September, 1914.

As we understand the claims of the parties, plaintiff
does not claim any part of the taxes under the levy made by
the board of supervisors in September, 1914, which were
collected before July 4, 1915, and defendant does not claim
that plaintiff would be entitled to such taxes for subsequent
years. The proposition, in a nutshell, as we get it, is whether
plaintiff is entitled to the taxes collected after July 4, 1915,
under the levy by the board of supervisors made in Septem-
ber, 1914.

The statute provides that cities such as plaintiff, under
the circumstances shown, "shall have full control of the
bridge fund levied and collected as provided by law, and
shall have the right to use the same for the construction of
bridges," etc. It seems that the controversy arises mainly
over the words "levied and collected." It is not alleged or
claimed that the city has made a levy that would cover the
taxes in question: that is, the taxes collected after July 4th.
It is contended by appellee that the levy made by the board
of supervisors in September, 1914, does cover the taxes in
question, even though they may not have been collected un-
til after July 4, 1915.

Appellant's contentions are that, under the statute in question, it was given full control of all the bridge fund levied and collected against the property within its limits after the date last mentioned; and thereafter, the county had no right or interest in the bridge fund collected by the county treasurer; that, under the enactment, it became incumbent upon plaintiff, from and after that date, to construct its culverts, bridges, and approaches thereto, repair the same, etc. They also say that, while Section 758-e of the Supplemental Supplement, 1915, provides that the act shall be construed as granting additional power, without limiting the power already existing in cities of the second class, all rights and privileges heretofore granted to the supervisors under Subdivision 4 of Section 1303, Code Supplement, 1913, were repealed, at least by implication, and that the county lost all jurisdiction over bridge funds levied and collected against the property within the city limits after July 4, 1915; that, after said date, the county lost all jurisdiction to create levies for bridge fund purposes against property within plaintiff's corporate limits; and that plaintiff's city council, after the statute in question became effective, was clothed with all authority and had exclusive jurisdiction to make levies against such property for bridge fund purposes; and that the board of supervisors lost all jurisdiction over bridge funds growing out of the levy already made by it prior to July 4th and uncollected; that, if it was the intention of the legislature that the county should still have control of the bridge fund coming into the hands of the treasurer after the act took effect, and collected from the levy theretofore made, it would have said so, by adopting a saving clause; and finally, that the county had no vested interest in the bridge funds collected after the statute took effect, under the levy made prior to that date. No authorities are cited by appellant on the last proposition. Cases in regard to that cited by appellee will be referred to later in the opinion.

Appellant cites authority and argues some of the rules
for construction of statutes. It is necessary to refer to some
other provisions of the statute which we think are not direct-
ly, or even by implication, repealed by the subsequent statute
relied upon by appellant. Sec. 1303, and Paragraph 4 there-
of, provide, in substance, that the board of supervisors shall
annually, at its September session, levy the taxes for making
and repair of bridges, upon the taxable property in the
county, excepting any property assessable within the limits
of a city of the first class. Section 1403, Code, 1897, pro-
vides, in substance, that taxes shall be paid in full at some
time between the first Monday in January and the first day
of March following, or one half thereof before the first day
of March succeeding the levy, and the remaining half be-
fore the first day of September following; but in all cases
where the half of any taxes has not been paid before the first
day of April succeeding the levy, the whole amount charged
against such entry shall become delinquent from the first
day of March after due; and, in case the second installment
is not paid before the first day of October succeeding its ma-
turity, it shall become delinquent from the first day of
September after due; and in all cases where taxes are paid
by installment, each of such payments, except road taxes,
shall be apportioned among the several funds for which
taxes have been assessed, in their proper proportions. Sec-
tion 1527-s8, Code Supplemental Supplement, 1915, provides,
among other things, that the duty to construct and maintain
all bridges and culverts throughout the county is imposed
on the board of supervisors, and that all culverts over four
feet and all bridges shall be paid for out of the county road
fund. The statute in question, Section 758, Supplemental
Supplement, 1915, before quoted, gives cities of the second
class having a population of 5,000 or over, which are trav-
ersed by a stream 200 feet or more in width, control of the
bridge fund levied and collected, and Section 758-a of the .

Supplemental Supplement, 1915, authorizes such cities to pay the cost of building or reconstruction of any bridge from the city bridge fund, to be levied upon all the property within any such city, and that it shall have the power, after the completion of the work, by ordinance or resolution, to levy at any one time the whole or any part of the cost of such improvement upon all the taxable property within the city, etc.

Appellee contends that, when the levy was made by the board of supervisors, in September, 1914, and later became a lien, the county acquired a vested right in these taxes, and that the construction contended for by plaintiff would render Section 758 unconstitutional; and in support of this cites *City of Dubuque v. Illinois Cent. R. Co.*, 39 Iowa 56; *Independent Dist. of Union v. Independent Dist. of Cedar Rapids*, 62 Iowa 616; *Slutts v. Dana*, 138 Iowa 244; *City of Davenport v. Chicago, R. I. & P. R. Co.*, 38 Iowa 633; *City of Burlington v. Burlington & M. R. R. Co.*, 41 Iowa 134; *City of Keokuk v. Kennedy*, 156 Iowa 680; *Board of Education of Normal School Dist. v. Blodgett*, 155 Ill. 441 (31 L. R. A. 70). Other cases are cited, to the point that a construction will not be given a statute so as to invalidate it, if, from the plain meaning of the language used, it can be construed so as to give it force and effect. Prior to July 4, 1915, when the statute under consideration and Sections 758-a to 758-e, inclusive, became effective, plaintiff, as a city of the second class, had no claim to or control over either the bridge fund when collected or the levy thereof. Section 758 provides that such city shall have control of the bridge fund levied and collected as provided by law. It does not read that such city shall have control of the bridge fund levied or collected, and it would seem, therefore, that the provision covers both the levy and collection. If the word "hereafter" appeared before "levy," so as to read "hereafter levied and collected," then it would seem quite clear that only those funds

actually levied and collected after the statute became effective would be paid over to the city. The suggested word "hereafter" would be surplusage, because, as a general rule, a legislative enactment operates prospectively. It seems to be conceded that there can be no collection of taxes without a levy.

We think the statute does not apply to funds levied prior to the time the statute took effect, and we think it was the legislative intent, from the language employed in the statute, that the plaintiff is entitled only to control and use bridge funds that were levied and collected beginning after the statute became effective. If this is not so, then the county and board of supervisors would be placed in a peculiar situation. The board, at its session in September, 1914, made their estimates for the bridge work in 1915, and made their levy accordingly. They may have, and doubtless did, contract for the necessary material and work, relying upon the amount of bridge fund taxes that would be realized in 1915 from this levy; this material and work must be, and may have been, paid for by the county out of this bridge fund; and, if the plaintiff is permitted to take from this fund the amount asked, it would have to be made up by a levy in later years on property outside the city. From what has been said, it would seem that, in view of the language used by the legislature in the statute, the saving clause, as contended by appellant, was not necessary. While it may be true, as argued by appellant, that the city is given control of its bridges and is made liable for defects after July 4, 1915, it would seem that the statute before quoted provides for the city's making the levy to meet any such expense incurred.

It is our conclusion that, for the reasons given, the city is not entitled to receive the second half of the 1914 taxes under the bridge levy by the board of supervisors. The rul-

ing and judgment of the district court are, therefore,—
*Affirmed.*

WEAVER, GAYNOR, and STEVENS, JJ., concur.